## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GEORGIA-PACIFIC CORP.,                )
                                      )
            Plaintiff,                )
                                      )        Civil Action No. 05-02431 (RBW)
      v.                              )        Judge Reggie B. Walton
                                      )
INTERNAL REVENUE SERVICE,             )
                                      )
            Defendant.                )

## MOTION FOR PARTIAL SUMMARY JUDGMENT
## AND *IN CAMERA* REVIEW OF IMPROPERLY-WITHHELD DOCUMENTS

Plaintiff Georgia-Pacific Corporation ("Georgia-Pacific"), pursuant to FED. R.

CIV. P. 56, Local Civil Rule 56.1, and 5 U.S.C. § 552, submits this Motion for Partial

Summary Judgment and *In Camera* Review of Improperly-Withheld Documents.

This case is an action for injunctive relief based on the refusal by Defendant

Internal Revenue Service ("IRS") fully and completely to respond to Georgia-Pacific's

request for documents under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

After eight months of delay, IRS produced roughly 3000 pages of text but withheld over

600 pages, contending that FOIA Exemptions 3, 5 and 6 are applicable.  IRS provided

sworn declarations purporting to explain its search, identify the documents allegedly

protected from disclosure, and asserting specific exemptions to each withheld document.

Based upon its review of these declarations, Georgia-Pacific (i) challenges the  scope of

IRS's search for responsive documents, (ii) asserts that the IRS's descriptions of the

documents are insufficient under the law, and (iii) challenges IRS's decision to withhold

seven documents under Exemption 5 and the deliberative process privilege.[1] As

discussed more fully in the supporting Memorandum of Points and Authorities, Georgia-

Pacific requests that the Court order IRS fully and completely to search for and release all

documents explaining the fact of or reason for the substantial modification to the

definition of "solid waste" as published in Treasury Regulation Section 1.103-8(f), T.D.

7199, and that the Court determine, after an *in camera* review, that the seven improperly-

withheld documents be released to Georgia-Pacific.

Georgia-Pacific requests an oral hearing on its Motion.

Dated:  June 16, 2006                         Respectfully submitted,

                                              _____/s/_____
                                              David P. Callet (DC Bar No. 181990)
                                              Ross E. Eisenberg (DC Bar No. 489045)
                                              GREENBERG TRAURIG LLP
                                              800 Connecticut Ave., N.W., Suite 500
                                              Washington, DC 20006


                                              OF COUNSEL:

                                              Michael L. Lehr
                                              Greenberg Traurig, LLP
                                              Two Commerce Square, Suite 2700
                                              2001 Market Street
                                              Philadelphia, PA  19103

                                              *Counsel for Plaintiff*
                                              *Georgia-Pacific Corporation*

---

[1] Georgia-Pacific actually believes that IRS has improperly withheld several additional documents as well. However, in a good-faith attempt to narrow the issues for this Court's review, Georgia-Pacific challenges only those documents it believes are most relevant to the specific portion of Treasury Regulation Section 1.103-8(f), T.D. 7199 implicated in its dispute with IRS.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|                                   |   |                                         |
|-----------------------------------|---|-----------------------------------------|
| GEORGIA-PACIFIC CORP.,            | ) |                                         |
|                                   | ) |                                         |
| Plaintiff,                        | ) | Civil Action No. 05-02431 (RBW)         |
|                                   | ) | Judge Reggie B. Walton                  |
| v.                                | ) |                                         |
|                                   | ) |                                         |
| INTERNAL REVENUE SERVICE,         | ) |                                         |
|                                   | ) |                                         |
| Defendant.                        | ) |                                         |
|                                   | ) |                                         |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND *IN CAMERA* REVIEW OF IMPROPERLY-WITHHELD DOCUMENTS**

Plaintiff Georgia-Pacific Corporation ("Georgia-Pacific"), pursuant to FED. R.

CIV. P. 56, Local Civil Rule 56.1, and 5 U.S.C. § 552, submits this Memorandum of

Points and Authorities in Support of its Motion for Partial Summary Judgment and *In*

*Camera* Review of Improperly-Withheld Documents.

**BACKGROUND**

I.    **Nature of the Documents Sought.**

Georgia-Pacific is defending several pending administrative proceedings before

the Defendant, Internal Revenue Service ("IRS"), with respect to the taxability of certain

tax-exempt bonds ("the Bonds") issued by various governmental issuers to finance solid

waste disposal facilities owned by Georgia-Pacific.  The outcome of each of these

proceedings turns on the meaning of "solid waste," as that term is defined in Treas. Reg.

Section 1.103-8(f), T.D. 7199 (the "Regulation").  Georgia-Pacific and the bond issuers

believe IRS is misapplying and/or misinterpreting the Regulation and, therefore, the

materials requested under the Freedom of Information Act ("FOIA") are of vital importance.

A proposed version of the Regulation was published by the U.S. Treasury Department on June 5, 1971. Thereafter, a public hearing respecting the proposed regulation was held. However, without any further explanation, on July 5, 1972, the U.S. Treasury Department issued the *final* regulation defining solid waste disposal facilities in a way that was substantially different from the definition contained in the proposed regulation. It is the modified portion of the definition that IRS relies upon to justify its determination that interest on the Bonds is subject to federal income tax. Therefore, Georgia-Pacific seeks disclosure of any documents that provide an explanation for this substantial modification.

Georgia-Pacific submitted a FOIA request to IRS on August 25, 2005, seeking "any and all documents, reports, records, memoranda, correspondence, notes, research, or other written or electronic materials, including public comments and hearing transcripts, that pertain to or were considered, reviewed, or referred to by Internal Revenue Service or Treasury Department personnel in connection with the promulgation, and any amendments thereto, of Treasury Regulation Section 1.103-8(f), T.D. 7199." Statement of Facts As To Which There Is No Genuine Issue ("Statement of Facts") at ¶¶ 1-2.

## II.    IRS's History of Delay.

The FOIA required IRS to respond within 20 days of Georgia-Pacific's request. 26 C.F.R. § 601.702. Instead, it took IRS almost *eight months* to respond. It requested two extensions of time – on September 21, 2005 and November 28, 2005 – while officials in IRS's internal disclosure offices dragged their feet. According to IRS, the

2

documents it claims are responsive to Georgia-Pacific's request are kept in a single file.
Statement of Facts at Exh. 3, ¶13. Yet the person(s) responsible for reviewing this file
did not attempt to find it, and did not even *begin* to review it, until after Georgia-Pacific
instituted this lawsuit. Statement of Facts at ¶9.

On February 16, 2006, IRS filed its Answer to Georgia-Pacific's Complaint. It
did not deny that it failed to meet its statutorily-required deadlines. Nor did it move for a
stay pursuant to <u>Open America v. Watergate Special Prosecution Force</u>, 547 F.2d 605
(D.C. Cir. 1976), as is customary for agencies unable to meet FOIA disclosure deadlines.
Instead, it simply admitted its tardiness and continued its practice of delay. IRS further
claimed in its Answer that "some or all of the documents responsive to Plaintiff's request
are exempt from disclosure in whole or in part pursuant to 5 U.S.C. § 552(b)." But five
days later, counsel for IRS advised Georgia-Pacific's counsel that IRS had completed
only its search for records generated by the request, *not* its review for exempted material.
Statement of Facts at ¶11. Apparently, IRS made a decision to withhold documents
before it had even looked at them.

Georgia-Pacific did not finally receive documents responsive to its August 25,
2005 request – one box of paper – until April 7, 2006. This box contained no documents
explaining IRS's reasons for the substantial change in the definition of "solid waste" as it
appears in the final Regulation. IRS explained at the time that the box contained 2,918
pages in their entirety and 125 pages in part. IRS withheld 613 pages in full and 125
pages in part. Statement of Facts at ¶12.

One month later, IRS sent to Georgia-Pacific the Declaration of Deborah
Lambert-Dean (the "Declaration"), a document explaining its processing of Georgia-

Pacific's FOIA request and listing all documents withheld and the exemptions IRS claimed were applicable to those documents. In the Declaration, IRS asserts that the withheld documents are protected by three FOIA exemptions in particular: (1) Exemption 3, 5 U.S.C. § 552(b)(3), in conjunction with 26 U.S.C. § 6103; (2) Exemption 5, 5 U.S.C. § 552(b)(5); and (3) Exemption 6, 5 U.S.C. § 552(b)(6). Statement of Facts at ¶15. However, none of the documents described in the Declaration address the modification of the definition of "solid waste" in the Regulation.

Georgia-Pacific alleged in its Complaint that IRS wrongfully withheld the documents requested pursuant to the FOIA, and sought an order requiring IRS to disclose the requested records in their entirety. Georgia-Pacific has now received the documents IRS believes are responsive to the FOIA request and a Declaration identifying documents that have been withheld from disclosure. Nothing IRS has produced – the documents or the Declaration – explains the policy behind the definition of "solid waste" in the final Regulation. The Declaration itself is replete with vague, boilerplate explanations that are difficult to decipher. Of the few explanations Georgia-Pacific was able to follow, seven documents appear to have been improperly withheld under Exemption 5's deliberative process privilege.[2] On May 19, 2006, Georgia-Pacific notified IRS of the deficiencies in its search for documents and of the existence of the seven improperly-withheld documents. IRS declined to reevaluate its search or the Declaration.

Pursuant to the scheduling order entered in this case, Georgia-Pacific and IRS are to file cross-motions for summary judgment. Because Georgia-Pacific challenges the

---

[2] Georgia-Pacific actually believes that IRS has improperly withheld numerous additional documents as well. However, in a good-faith attempt to narrow the issues for this Court's review, Georgia-Pacific challenges only those documents it believes are most relevant to the specific portion of Treasury Regulation Section 1.103-8(f), T.D. 7199 implicated in its dispute with IRS.

4

scope of IRS's search for records and its decision to withhold seven non-exempt documents, Georgia-Pacific must necessarily: (1) ask the Court to order IRS to perform a more complete search for responsive documents; (2) request an *in camera* inspection of the seven improperly-withheld documents; and (3) move for partial summary judgment with respect to the remaining claims at issue in this case.

**ARGUMENT**

### I.    <u>Summary Judgment Standard</u>

Under FED. R. CIV. P. 56(c), a party is entitled to summary judgment when the evidence in the record demonstrates that no disputed issues of fact remain and that the moving party is entitled to judgment on the undisputed facts as a matter of law. FED. R. CIV. P. 56(c). In a FOIA case, a requester may obtain summary judgment when it establishes "the absence of material factual issues before a summary disposition of the case could permissibly occur." <u>National Ass'n of Gov't Employees v. Campbell</u>, 593 F.2d 1023, 1027 (D.C. Cir. 1978). Even where the requester of documents has filed a motion for summary judgment, "the Government 'ultimately has the onus of proving that the documents are exempt from disclosure.'" <u>Public Citizen Health Research Group v. Food & Drug Admin.</u>, 185 F.3d 898, 904 (D.C. Cir. 1999) (quoting <u>Campbell</u>, 593 F.2d at 1027).

### II.    <u>The Government's search for documents responsive to Georgia-Pacific's FOIA request was inadequate.</u>

With respect to a search for records under the FOIA, an agency must show that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." <u>Campbell v. United States Dep't of Justice</u>, 164 F.3d 20, 27 (D.C. Cir. 1998) (quoting

5

<u>Oglesby v. United States Dep't of the Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990)).  The reviewing court then applies a "reasonableness" test to determine the adequacy of the agency's search methodology, consistent with a congressional intent in favor of disclosure.  <u>Campbell</u>, 164 F.3d at 27 (citing <u>Weisberg v. United States Dep't of Justice</u>, 705 F.2d 1344, 1351 (D.C. Cir. 1983), and <u>John Doe Agency v. John Doe Corp.</u>, 493 U.S. 146, 151-2 (1989)).   In the present case, IRS's search for documents was unreasonable as a matter of law.

The Federal Records Act (FRA) requires agencies to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." 44 U.S.C. § 3101.[3]  Under the Federal Records Act, *somewhere* in the file for T.D. 7199 should be an explanation of IRS's policy with respect to its definition of "solid waste" and solid waste disposal facilities, particularly since IRS substantially modified the definition after publication of proposed regulations and before issuing the version it now relies on to declare interest on the Bonds taxable.  To the extent this information exists, Georgia-Pacific is clearly entitled to it under the FOIA; as adopted agency policy, it is not exempt from disclosure. <u>American Soc'y of Pension Actuaries v. Internal Revenue Serv.</u>, 746 F. Supp. 188, 191 (D. D.C. 1990).

The IRS's own internal manual for assembly and storage of files compels this conclusion.  According to the IRS's Declaration, "the attorney assigned to a regulation

---

[3] This section of the Federal Records Act was enacted in 1968 and was in force at the time the Regulation was drafted by IRS.

project is to create a legal file that the attorney is responsible for maintaining until the file

is closed." Statement of Facts at Exh. 3, ¶13. This legal file contains "all documents

germane to the publication of the regulation" and includes, among other things, briefing

memoranda, conference and briefing reports, public comments, and administrative

memoranda. Id. Under the IRS's own rules, then, any document relating to the adopted

definition of "solid waste" should be kept in the file designated for T.D. 7199.

However, none of the documents produced in response to Georgia-Pacific's FOIA

requests or listed on the IRS's Declaration appear to address the fact of or reason for the

substantial modification to the definition of "solid waste" in the Regulation. Given the

IRS's legal obligation to maintain a record of this change, only two possible conclusions

can be drawn: either (1) documents do not exist and IRS has not fulfilled its duty under

the FRA, or (2) the IRS's search for records responsive to Georgia-Pacific's FOIA

request was inadequate.

The Declaration suggests that the IRS performed a perfunctory, disorganized

search for records responsive to Georgia-Pacific's request. The offices initially

undertaking the search could not locate the file, and appear to have simply given up.

Statement of Facts at Exh. 3, ¶¶ 6-12. Ms. Lambert-Dean's office then obtained the file

for the Regulation, but did so only because Georgia-Pacific had filed suit. There is no

evidence that any office within IRS attempted to find records other than the file for T.D.

7199.

An agency "cannot limit its search to only one record system if there are others

that are likely to turn up the information requested." Campbell, 164 F.3d at 28. While

Georgia-Pacific acknowledges that the Declaration is "accorded a presumption of good

7

faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents,'" SafeCard Services, Inc. v. Securities and Exchange Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)), Georgia-Pacific's inquiry is hardly speculative.  IRS must have at least one document explaining why it changed the definition of "solid waste" from that which was originally proposed.

As the United States Court of Appeals for the District of Columbia Circuit has held, an agency "has discretion to conduct a standard search in response to a general request, but it must revise its assessment of what is 'reasonable' in a particular case to account for leads that emerge during its inquiry." Campbell, 164 F.3d at 28.  For this reason, the reviewing court "evaluates the reasonableness of an agency's search based on what the agency knew at its *conclusion* rather than what the agency speculated at its inception." Id. (emphasis added).  In the present case, IRS knew at the conclusion of its search that documents it was required by law to create and maintain were not in the file for the Regulation.  Statement of Facts at ¶16.  As a matter of law, the IRS's search was unreasonable, and Georgia-Pacific respectfully requests that this Court order IRS to conduct the reasonable and thorough search mandated by the FOIA and produce all documents explaining the fact of or reason for the substantial modification to the definition of "solid waste" as published in the Regulation.  If IRS cannot produce such documents because none exist, IRS should acknowledge this fact.

8

**III.    The Government's flawed Declaration indicates that seven documents have been improperly withheld by IRS under Exemption 5, 5 U.S.C. § 552(b)(5).**

A.    The Declaration does not satisfy the requirements of *Vaughn v. Rosen*.

Georgia-Pacific challenges seven documents improperly withheld by IRS under the deliberative process privilege as codified by Exemption 5, which protects from disclosure "inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Declaration fails to describe these withheld documents, or the reason the exemption applies to them, with sufficient specificity, and Georgia-Pacific therefore requests that the Court examine the seven improperly-withheld documents *in camera*.

Under Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), IRS must provide a detailed index or similar document sufficient to establish that the documents withheld fall clearly beyond the range subject to disclosure. Vaughn, 484 F.2d at 827. The purpose of a Vaughn Index is to "permit adequate adversary testing of the agency's claimed right to an exemption." Schiller v. NLRB, 964 F.2d 1205, 1209 (D.C. Cir. 1992). While declarations are typically an approved method under Vaughn, and while the Declaration itself provides short explanations for withholding documents, too often the Declaration addresses large groups of allegedly exempt documents through a catch-all, one-sentence description. This is the problem, for example, with respect to the five improperly-withheld drafts of the Regulation listed in paragraph 19(f) of the Declaration and contested by Georgia-Pacific in this Motion.

IRS has withheld five drafts of the Regulation using the following description: "a draft (or portion of a draft) of the proposed regulation on industrial development bonds as it was contemplated for promulgation under section 103 of the Internal Revenue Code."

9

Statement of Facts at Exh. 3, ¶19(f).  IRS asserts a generalized, blanket exemption, and it is impossible to know what, if anything, these drafts pertain to and why they are exempt. In fact, there are actually thirteen documents withheld by this same paragraph, but IRS confirmed (upon Georgia-Pacific's inquiry) that only five of them pertain to solid waste disposal facilities.  This admission alone demonstrates the deficiencies in the Declaration; the fact that five of the thirteen withheld documents differ materially from the other eight illustrates the need for greater detail in the Declaration itself.  There is simply no telling what other releasable documents are hiding behind the IRS's vague, unhelpful descriptions.

It is the function, not the form of the <u>Vaughn</u> index that is important.  <u>Keys v. Department of Justice</u>, 830 F.2d 337, 349 (D.C. Cir. 1987).  Broad, sweeping claims of privilege without reference to the withheld documents impede judicial review and undermine the functions served by the <u>Vaughn</u> index requirement.  The agency must explain why an exemption applies to the document or type of document withheld and may not ignore the contents of the withheld documents.  <u>Campbell</u>, 164 F.3d at 30-31.

With respect to IRS's deficient descriptions in the Declaration, <u>SafeCard Serv., Inc. v. Securities and Exch. Comm'n</u>, 926 F.2d 1197 (D.C. Cir. 1991) is instructive.  In <u>SafeCard</u>, the D.C. Circuit evaluated the following <u>Vaughn</u> Index description made by the SEC:

> At this 1/24/78 meeting, the Commission discussed whether to file an injunctive action against Marc Howard and Howard Associates.  At the conclusion of this discussion, the Commission reached a decision on this question.  These minutes reflect the Enforcement attorney's recommendations to the Commission that are protected from disclosure by the deliberative process privilege.

SafeCard, 926 F.2d at 1204.  The court found this description inadequate because "[t]he

SEC needs to explain such matters as how decisions like those in issue are reached; the

role that staff discussion and memoranda play in such decisions; the manner in which

such decisions are memorialized and explained; and whether such decisions are treated,

in later agency decisionmaking, as precedents." Id.  Ultimately, the D.C. Circuit in

SafeCard found the record inadequate to support the SEC's deliberative process claim.  In

particular, the court stated:

> In this case SafeCard claims that the discussions contained in the
> Commission minutes may explain, or have been incorporated into, the
> final decisions to which they relate.  Because the SEC has failed to
> disclose the substance of those final decisions, and has failed to explain
> the decisionmaking process in such a way as to make it clear that there is
> no need for such disclosure, it has not met its burden of demonstrating that
> the deliberative process exemption is applicable.

Id. at 1205.

The IRS's Declaration in the present case is even less informative than that found

insufficient in SafeCard and therefore suffers from precisely the same problem.  The IRS

has merely identified five drafts of the Regulation , but failed to explain why they are

exempt under the deliberative process privilege.  (Not to mention that the one-sentence

description in the Declaration pales in comparison to the Vaughn Index entry the

SafeCard court found to be inadequate.)  IRS has not met its burden of demonstrating that

Exemption 5 applies, and any improperly-withheld documents or segregable portions

thereof must be released to Georgia-Pacific.

B.    Exemption 5 and the deliberative process privilege allow IRS to withhold
      only documents that are both "predecisional" and "deliberative."

Agencies may withhold documents under Exemption 5 and the deliberative

process privilege only when those documents are both "predecisional" and "deliberative."

<u>Defenders of Wildlife v. United States Dep't of Agriculture</u>, 311 F. Supp. 2d 44, 56 (D.

D.C. 2004).  To be "predecisional," the document must be generated as part of a

continuing process of agency decisionmaking – in other words, it must have been

prepared to assist the agency in arriving at a decision.  <u>Id.</u> at 58.  To be "deliberative," it

must be a "direct part of the deliberative process," <u>i.e.</u>, it must "make[] recommendations

or express[] opinions on legal or policy matters."  <u>Id.</u>  Implicit in a determination that a

document is deliberative is a finding that disclosure of the information would discourage

candid discussion within the agency.  <u>Id.</u>

     However, "predecisional" status terminates "abruptly the moment a decision is

made by the executive."  <u>American Soc'y of Pension Actuaries v. Internal Revenue Serv.</u>,

746 F. Supp. 188, 190 (D. D.C. 1990) ("<u>ASPA</u>").  As a result, all communications

"'made after the decision and designed to explain it' are reachable under the FOIA."  <u>Id.</u>

(quoting <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 151 (1975)).  Similarly,

information is no longer "deliberative" if "the materials have been 'adopted formally or

informally, as the agency position on an issue' or 'used by the agency in its dealings with

the public.'"  <u>Leadership Conference on Civil Rights v. Gonzales</u>, 404 F. Supp. 2d 246,

255 (D. D.C. 2005).  All documents embodying the "agency's effective law and policy"

are "subject to FOIA-mandated production."  <u>ASPA</u>, 746 F. Supp. at 190 (quoting <u>Sears</u>,

421 U.S. at 153).

     C.    <u>Seven documents have been improperly withheld by IRS.</u>

     Based on its review of the IRS's Declaration, Georgia-Pacific challenges seven

documents improperly withheld under Exemption 5, because they are neither

"predecisional" or "deliberative."

> Document #1:  Memorandum dated January 2, 1969 from Mr.
> McDaniel to a government employee Mr. Surrey consisting of an
> assessment of the intended purpose of the proposed regulation being
> drafted under section 103 and containing a summary of the principal
> issues encountered during the formulation of the proposed regulation
> as well as the IRS's intended response to these issues.  Statement of
> Facts at Exh. 3, ¶19(ll).

This document is improperly withheld because it is not deliberative.  The

"intended purpose" of the Regulation became the agency's adopted policy, and is

therefore not protected by the deliberative process privilege.  Gonzales, 404 F. Supp. 2d

at 255; ASPA, 746 F. Supp. at 190.  Moreover, the Declaration fails to demonstrate that

this document is "intra-agency" or "inter-agency."  Mr. McDaniel is identified in the

Declaration as Tax Legislative Counsel within IRS, but Mr. Surrey is merely a

"government employee."  Communications between agencies and their consultants,

independent contractors and other third parties are exempt only to the extent that the

consultant/independent contractor/third party does not represent its own interest, but

rather that of the agency (e.g., as a fiduciary).  Department of the Interior and Bureau of

Indian Affairs v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 11-12 (2001).  To

the extent that Mr. Surrey is a self-interested third party, his communications with IRS

are not protected by Exemption 5.  Finally, even if a document contains some protected

material (i.e., issues encountered during formulation of the proposed regulation), the

FOIA requires IRS to release as much segregable material as possible.  5 U.S.C. §

552(b); see also Judicial Watch v. Department of Justice, 432 F.3d 366, 372 (D.C. Cir.

2005) (factual material is not protected under the deliberative process privilege unless it

is "inextricably intertwined" with the deliberative material).

> Document #2:  an undated, unsigned draft memorandum concerning
> the proper tax treatment of industrial development bonds when issued
> by non-specific entities.  Statement of Facts at Exh. 3, ¶19(aaa).

13

This document is improperly withheld because it is neither predecisional nor deliberative. Because it is a memorandum concerning the "proper" treatment of industrial development bonds, it is postdecisional – in fact, it is precisely the kind of document "made after the decision and designed to explain it" identified by the United States Supreme Court in Sears. The advisory nature of the memorandum (and the fact that it seeks to explain "policy") demonstrates that the document is not deliberative, either. This document embodies the IRS's effective law and policy, see ASPA, 746 F. Supp. at 190, and cannot possibly be deliberative.

To the extent IRS believes the document should be withheld partly because it is an "undated, unsigned draft memorandum," it is incorrect. Simply labeling a document "draft" does not make it exempt pursuant to the deliberative process privilege, Defenders of Wildlife, 311 F. Supp. at 58, and IRS invokes no other applicable privilege. See Statement of Facts at Exh. 3, ¶19 (asserting only the deliberative process privilege to documents withheld under Exemption 5). Thus, this document has been improperly withheld and must be released.

> Documents #3-7: a draft (or portion of a draft) of the proposed regulation on industrial development bonds as it was contemplated for promulgation under section 103 of the Internal Revenue Code. Statement of Facts at Exh. 3, ¶19(f).

These five documents have all been withheld via a broad, general description which sheds absolutely no light on the ostensible reason for their withholding. It is unclear how any of these draft regulations embody the type of "agency give-and-take" that the deliberative process privilege is meant to protect. By the IRS's own description, they do not contain intra-agency communications, or even handwritten notes or margin notations indicative of a "deliberative process." They are merely drafts of the

14

Regulation, and simply labeling these documents "draft" does not make them exempt under Exemption 5. Defenders of Wildlife, 311 F. Supp. at 58.

Rosenthal and Schanfield v. Internal Revenue Serv., 1980 WL 1590, at *1 (N.D. Ill. Apr. 22, 1980), an unreported case from the Northern District of Illinois, involved a FOIA request very similar to Georgia-Pacific's, in which the plaintiff sought an explanation for the IRS's adoption of a Treasury Regulation. The court held that, where the draft regulation contained language expressly adopted in the final published regulation, the document was not protected by Exemption 5 and had to be released. In reaching this conclusion, the court in Rosenthal relied upon the Supreme Court's instruction in Sears that documents an agency chooses "expressly to adopt or incorporate by reference" are not exempt. Rosenthal, 1980 WL 1590 at *3. Ten years later, this very Court cautioned that the word "expressly" should not be accorded undue weight. ASPA, 746 F. Supp. at 191. Under ASPA, parts of the draft regulations relied upon in adopting the final regulation, in addition to those expressly adopted or incorporated by reference, are not exempt and should be released to Georgia-Pacific.

To the extent any of the materials contained in any of the five withheld draft regulations were adopted in the final regulation, they are official IRS policy and must be released. To the extent they are contained in documents with protected information, the protected information must be redacted, and all non-privileged information must be released to Georgia-Pacific.

        D.      The only adequate remedy is an *in camera* inspection of the seven documents to determine whether they should be released.

When agency affidavits are not sufficiently detailed to permit meaningful assessment of exemption claims, *in camera* review is appropriate. PHE, Inc. v.

15

Department of Justice, 983 F.2d 248, 252 (D.C. Cir. 1993). While "resort to *in camera* review is discretionary," Stephenson v. Internal Revenue Serv., 629 F.2d 1140, 1145 (5th Cir. 1980), this Court should be wary of the "dangers inherent upon agency affidavits in an investigative context when alternative procedures such as sanitized indexing, random or representative sampling in camera with the record sealed for review, oral testimony or combinations thereof would more fully provide an accurate basis for decision." Id.

Nor would a redraft of the Declaration by IRS constitute adequate relief in this case. Although agency affidavits are generally afforded a presumption of good faith, Citizens for Responsibility and Ethics in Wash. v. Department of Justice, 405 F. Supp. 2d 3, 5 (D. D.C. 2005), Georgia-Pacific has identified flaws in IRS's Declaration sufficient to rebut that presumption. Allowing IRS a "second bite of the apple" in light of the issues raised in this Motion would tempt IRS merely to revise questionable language in the Declaration to effectively "hide the ball" from Georgia-Pacific.

Georgia-Pacific does not ask the Court to review the hundreds of pages described in the Declaration. It has narrowed the scope of challenged documents to just seven documents, and requests that the Court review these seven documents *in camera* to determine whether they have been improperly withheld. Georgia-Pacific has demonstrated that, based on their descriptions, these seven documents are neither predecisional nor deliberative. Moreover, the slipshod treatment of these documents in IRS's Declaration virtually compels the Court's review.

## CONCLUSION

The scope of IRS's search was inadequate, and the Court should order IRS to perform a full and complete search in order to identify all documents explaining the

agency's rationale for the substantial modification of the definition of "solid waste"during the rulemaking process.  If IRS cannot perform the search because such documents do not exist, IRS must say so.  In addition, the Court should review the seven documents identified in this Motion *in camera* because the IRS Declaration claiming exemptions as to those documents is patently inadequate.  Unless such review clearly demonstrates that the deliberative process exemption to disclosure applies, the Court should order that the documents be released.

For the foregoing reasons, Plaintiff Georgia-Pacific requests that the Court grant its Motion for Partial Summary Judgment and *In Camera* Review of Improperly-Withheld Documents.


Dated: June 16, 2006                          Respectfully submitted,

                                                            /s/
                                              _____
                                              David P. Callet (DC Bar No. 181990)
                                              Ross E. Eisenberg (DC Bar No. 489045)
                                              GREENBERG TRAURIG LLP
                                              800 Connecticut Ave., N.W., Suite 500
                                              Washington, DC 20006


                                              OF COUNSEL:

                                              Michael L. Lehr
                                              Greenberg Traurig, LLP
                                              Two Commerce Square, Suite 2700
                                              2001 Market Street
                                              Philadelphia, PA  19103

                                              *Counsel for Plaintiff*
                                              *Georgia-Pacific Corporation*