IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GEORGIA-PACIFIC CORP.,                          )
                                                )
            Plaintiff,                          )
                                                )
        v.                                      )    1:05CV02431 (RBW)
                                                )
INTERNAL REVENUE SERVICE,                       )
                                                )
            Defendant.                          )

<u>DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>

The Internal Revenue Service, defendant, moves for summary judgment in this matter.  As grounds for its motion, defendant states that the material facts are not in dispute and that it is entitled to judgment as a matter of law.  Specifically, defendant states that it has (1) performed an adequate search for documents responsive to plaintiff's FOIA request; and (2) with respect to the withheld documents at issue in this action, it has withheld only those documents, or portions thereof, authorized by 5 U.S.C. § 552(b).   Accordingly, the Court should dismiss this case.

Attached to this motion as Exhibit 1 is the declaration of Deborah Lambert-Dean. A statement of facts, supporting memorandum of law, and proposed order are also filed with this motion.

DATED:      June 16, 2006

Respectfully submitted,

/s/ Brittney N. Campbell
DAVID M. KATINSKY
BRITTNEY N. CAMPBELL
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6435

OF COUNSEL:

KENNETH WAINSTEIN
United States Attorney

<u>CERTIFICATE OF SERVICE</u>

IT IS CERTIFIED that service of the foregoing defendant's Cross-Motion for

Summary Judgment has been made this 16th day of June, 2006, by mailing, postage

prepaid, addressed to:

> David P. Callet, Esq.
> Greenberg Traurig LLP
> 800 Connecticut Avenue, NW
> Suite 500
> Washington, D.C. 20006

> _/s/ Brittney N. Campbell_
> BRITTNEY N. CAMPBELL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

GEORGIA-PACIFIC CORP., )
    Plaintiff, )
     )     1:05 CV-02431
    v. )
     )
INTERNAL REVENUE SERVICE )
    Defendant. )

DECLARATION OF DEBORAH LAMBERT-DEAN

    I, DEBORAH LAMBERT-DEAN, pursuant to the provisions of 28 U.S.C.

§ 1746, declare and say:

    1. I am an attorney in the Office of Chief Counsel, Disclosure & Privacy

Law [DPL], Branch 2, Internal Revenue Service [IRS] and, since December

2005, I have been assigned to the above-captioned case. I have been employed

as an attorney in Disclosure & Privacy Law since September 1987.

    2. As part of my official duties, I am responsible for coordinating with the

Department of Justice the IRS's defense of the Freedom of Information Act

(FOIA) lawsuit in which this declaration is being filed

    3. I have personally reviewed and am familiar with all the documents at issue

in this lawsuit.

    4. I am familiar with the segregation requirement of subsection (b) of the

FOIA for any nonexempt information contained in responsive agency records. I

have reviewed all documents at issue in this litigation and have attempted to

make every reasonably segregable non-exempt portion of every responsive

1

GOVERNMENT
EXHIBIT
1

document available to the plaintiff.  The IRS has withheld in their entirety only

those documents that fall as a whole within a FOIA exemption, or those

documents wherein the portions exempt from disclosure under the FOIA are so

inextricably intertwined with nonexempt material as to be non-segregable.

Through the Department of Justice, our office has released to plaintiff 2,918

pages in their entirety and 125 in part.

### THE FOIA REQUEST

5.  Plaintiff submitted a FOIA request to the IRS dated August 25, 2005,

asking for:

Copies of any and all documents, reports, records,

memoranda, correspondence, notes, research, or other written

or electronic materials, including public comments and hearing

transcripts, that pertain to or were considered, reviewed, or

referred to by Internal Revenue Service or Treasury

Department personnel in connection with the promulgation,

and any amendments thereto, of Treasury Regulation Section

1.103-8(f), T.D. 7199.

(A copy of this request is attached as Exhibit A to this Declaration).

6.  The Office of Governmental Liaison and Disclosure (GLD) in IRS National

Office (Washington, D.C.) is responsible for processing all FOIA requests made for

documents located in the National Office and by memorandum dated September

20, 2005, GLD initiated a search for responsive documents by forwarding a copy of

plaintiff's request to the Legal Processing Division [LPD] within the Office of

Associate Chief Counsel, Procedure & Administration, the function responsible for maintaining files for finalized published guidance, such as T.D. 7199. (A copy of this search request is attached as Exhibit B to this Declaration).

7. By letter dated September 21, 2005, GLD asked plaintiff for a voluntary extension of time to respond to their FOIA request, seeking an additional 60 days. (A copy of this letter is attached as Exhibit C to this Declaration).

8. LPD initiated a search for responsive documents and determined that the files associated with T.D. 7199 had been provided to an attorney in the Office of Chief Counsel, Tax Exempt and Government Entities (TEGE) in July 2005 and had not been returned to LPD by that attorney. In an electronic mail transmission dated October 31, 2005, LDP asked the attorney who had these files to return them to LPD. By electronic mail dated November 1, 2005, the attorney replied, agreeing to do so. (A copy of these electronic mail transmissions is attached as Exhibit D to this Declaration).

9. Because GLD had not yet been provided with a response from LPD to their request for documents associated with T.D. 7199, by memorandum dated November 28, 2005, GLD once again asked LPD to search for responsive documents. (A copy of this memorandum is attached as Exhibit E to this Declaration).

10. Also by letter dated November 28, 2005, GLD once again asked plaintiff for a voluntary extension of 60 days to respond to plaintiff's request. (A copy of this letter is attached as Exhibit F to this Declaration).

11.  The defendant did not make a substantive response to plaintiff's request and plaintiff did not file an administrative appeal under the FOIA prior to the instigation of this litigation on December 20, 2005.

12.  My office received a copy of plaintiff's complaint on December 20, 2005, and it was assigned to me.  Because I was absent from the office from before December 20, 2005 until January 3, 2006, my manager Gerald R. Ryan, Senior Technician Reviewer, Branch 2, DPL, initiated the search for both the administrative FOIA request file and for the documents responsive to the FOIA request.  Those documents referenced above as Exhibits A-F were obtained from the administrative FOIA request file maintained with GLD.  The responsive documents were provided to my office by LPD's Docket, Record's and User Fees Branch.

13.  The assembly and storage of files such as the file for T.D. 7199 at issue here, is governed by guidelines set forth in the Internal Revenue Manual [IRM].  The IRM specifies that the attorney assigned to a regulation project is to create a legal file that the attorney is responsible for maintaining until the file is closed.  The legal file is to contain all documents germane to the publication of the regulation, including published regulations and notices, unmarked drafts, drafts that have been marked-up by the IRS and/or the Department of Treasury along with related buckslips and distribution memorandum, briefing memoranda, IRS and Treasury memoranda (designated as transmittal, policy memoranda and internal comments), conference and briefing reports (designated as summaries of conferences and briefing sessions), public comments, (including summaries of these comments and documents related to public hearings), administrative memoranda, handwritten

4

1  notes, email communications and, after a regulation has been published, a copy of

2  the *Federal Register* reprint.  When a regulation is published and the assembly of

3  the legal file for the T.D. is complete, the file is to be labeled with the T.D. number

4  and submitted to the Docket, Records and User Fee Branch in LPD for storage.

5  See IRM at 30.9.2.1.1 (7-21-2005).  (Copy attached as Exhibit G to this

6
7  Declaration).  This is the Branch that Mr. Ryan contacted in late December 2005,

8  and that Branch provided our office with the complete file for T.D. 7199.

9                    PROCESSING THE T.D. 7199 DOCUMENTS

10       14.  The documents responsive to plaintiff's request total 3,656 pages.  I

11  reviewed these documents and, in conjunction with my Branch Chief Donald M.

12  Squires, made determinations with regard to the assertion of applicable FOIA

13
14  exemptions.  On April 4, 2006, based on this review, my office provided the

15  Department of Justice with 2,918 pages to be released to plaintiff in full and 125

16  pages to be released to plaintiff in part.   In paragraphs 16, 19 and 21 of this

17  declaration, I have described the documents that were withheld, either in full or in

18  part, that remain at issue in this lawsuit.  In paragraphs 15, 17-18 and 20, I have

19  described the rationale under the FOIA for withholding those documents either in

20  part or in full.

             EXEMPTION (b) (3) IN CONJUNCTION WITH § 6103(a)

23       15.  Certain of the documents were withheld either in full or in part

24  pursuant to Exemption (b) (3) in conjunction with 26 U.S.C. § 6103.  Exemption 3

25  and § 6103 are asserted with respect to documents, or portions of documents,

26  that either consist of third party return information in their entirety or reference

27
28                                5

specific third party taxpayers. FOIA subsection (b)(3) permits the withholding of records that are specifically exempted from disclosure pursuant to a qualifying statute other than the FOIA. I.R.C. § 6103, which sets forth particularized criteria for the disclosure of returns and return information, has been held to be a statute meeting the criteria of FOIA subsection (b)(3). Exemption (b)(3) is being asserted in conjunction with I.R.C. § 6103(a) to withhold the return information of individuals and entities other than plaintiff. I.R.C. § 6103(b)(2) defines "return information," in pertinent part, as:

(A) a taxpayer's identity ... or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability [under the Internal Revenue Code] ... .

I.R.C. § 6103(a) provides that returns and return information shall not be disclosed except as authorized by any provision of the Code. Plaintiff has not demonstrated a material interest within the meaning of 26 U.S.C. § 6103(e) nor has it furnished the Service with consents of any of these third party taxpayers consistent with 26 U.S.C. § 6103(c). Accordingly, plaintiff has not demonstrated its entitlement to any third party tax information.

16. The following are those documents that have been withheld, either in full or in part, pursuant to Exemption (b) (3) in conjunction with 26 U.S.C. § 6103:

(a) Pages 184-187: This document has been withheld in its entirety. This is a memorandum dated July 7, 1971, from IRS employee C. Willis Ritter to

6

"Files" concerning a question that a specific third party taxpayer had presented to the IRS about a specific facility in which the taxpayer was involved and whether bonds issued to build that facility be exempt under the Internal Revenue Code [I.R.C. or Code] and the proposed industrial development bond regulations, T.D. 7199.  The memorandum is being withheld in its entirety as third party tax return information since it consists entirely of a discussion of this taxpayer's transaction and how the IRS may want to treat such a transaction.

(b)  Pages 190-193, 2068-2071:  These documents have been withheld in their entirety.  These are two copies of a "Memorandum to File" dated September 7, 1972, written by IRS employee Kenneth Iltz entitled "Corrections to T.D. 7199 (relating to industrial development bonds)".  It consists of the author's impressions as to why and how certain revisions to T.D. 7199 came to be viewed as necessary after its publication on August 3, 1972 as they affected a specific third party taxpayer.

(c)  Pages 216-218:  This document has been withheld in its entirety.  This is a letter from the representative of a third party taxpayer reflecting the representative's views as to how the proposed regulation could adversely affect their client.  This letter was not submitted to the IRS as part of a public comment period on proposed regulations and the representative specifically asked that the IRS keep the contents of the letter confidential.

(d)  Page 622:  A portion of this page has been withheld.  The document is a comment on a proposed regulation concerning industrial development bonds that was submitted to the IRS by a specific taxpayer  The withheld portion

7

consists of a handwritten notation detailing tax information concerning the specific taxpayer who had submitted the comment.

(e) Pages 866-868:  This document has been withheld in its entirety.  It is an unsigned "Memorandum to File" dated December 23, 1970, related to a provision made within the draft proposed regulation with respect to a transaction entered into by a specific third party taxpayer.  It consists of the authors impressions and opinions as to how and why certain provisions of the proposed draft regulation were tailored for the benefit of this taxpayer

(f) Pages 1019-1022:  This document has been withheld in its entirety. This is a "Conference Memorandum" about a meeting that was held in September 1970, at the request of specific third party taxpayers concerning industrial development bonds.  The memorandum details specific problems these taxpayers anticipate as the result of the implementation of the proposed regulation and proposals made by these taxpayers in order to alleviate their concerns with respect to these perceived problems.  There is discussion as to the IRS/Treasury's likely response to these taxpayers' concerns as well as some discussion as to proposed legislative changes sought by these third party taxpayers.

(g) Pages 1076-1079:  This document is being withheld in its entirety.  It is an unsigned, undated draft memorandum prepared within the Legislation and Regulations Division and not addressed to any party.  The stated purpose of the memorandum is to serve as an aid in the construction and interpretation of certain terms in connection with the development of draft proposed regulations

8

under section 103(c)(4)(E).  There is a brief discussion of a ruling issued to a specific third party taxpayer.

(h)  Pages 1081-1082:  This document is being withheld in its entirety.  It is a letter dated December 18, 1969, to Treasury's Tax Legislative Counsel from the congressional delegation of a specific state concerning a ruling issued by the IRS to a third party taxpayer located within that state.

(i)  Pages 1085-1086:  This document is being withheld in its entirety.  It is a letter dated December 12, 1969, from the Treasury Tax Legislative Counsel to the representative of a third party taxpayer concerning the tax implications of proposed regulations upon a third party taxpayer and providing details as to a proposed meeting between the taxpayer's representative and the Office of Tax Legislative Counsel.

(j)  Page 1087:  This document is being withheld in its entirety.  This is a letter from the Secretary of Treasury to the representative of a third party taxpayer concerning whether certain transactions engaged in by the representative's clients would fall within the purview of legislation on industrial development bonds.

(k)  Pages 1088 and 1089:  Portions of these two documents have been withheld.  These are two copies of a one page memorandum from Mr. Nolan, Assistant Secretary of Treasury to Mr. Kennedy, the Secretary of the Department of Treasury concerning a revenue ruling with respect to bonds that are to be issued by a specific taxpayer.  The withheld portions identify the taxpayer by name and, certain of the withheld portions contain analysis as to the effect

9

existing tax law would have on the taxpayers liabilities

(l)  Pages 1090-1098:  These pages have been withheld in their entirety. These documents consist of a cover letter and accompanying draft documents from the representative of a third party taxpayer to the Secretary of the Treasury. These documents include the name of the third party taxpayer, a summary as to the history of the formulation of the third party entity, a list of the directors for the third party taxpayer, a memorandum summarizing the transactions in which the third party taxpayer has engaged and the author's opinions as to how current legislation on industrial development bonds will impact the third party entity.

(m)  Pages 1099-1103:  This document is being withheld in its entirety. This is a memorandum from the Tax Legislative Counsel to the Director, Legislation and Regulations concerning proposed industrial development bond regulations.  The letter contains detailed discussions of policy areas that the Legislative Counsel believes should be considered by Legislation and Regulations when they making revisions to the draft proposed regulation and contains taxpayer specific examples as to how certain determinations with respect to certain policy considerations may play out with respect to these third party taxpayers.

(n)  Page 1104: This document has been withheld in its entirety.  This is a memorandum of a telephone conversation dated December 3, 1969, concerning a conversation in which Arnold Levine, Income Tax Division, and a Congressman participated.  The conversation concerned a specific issue raised by one of the Congressman's constituents who had asked the Congressman to intervene with

the IRS on his behalf.  The discussion centered on what actions the constituent could take in order to satisfy certain legislative requirements.

(o) Pages 1105-1112:  These three letters are being withheld in their entirety.  These are copies of correspondence all of which relate to the constituent concerns referenced above as page 1104.  Pages 1105-1106 is a letter from the Congressman to the IRS describing his constituent's transaction, the tax problems associated with how the transaction was structured, and asking for the IRS to assist the constituent with this matter.  Pages 1107-1108 is a letter from the Chairman of the House Ways and Means Committee to the Congressman describing to the Congressman the views of the Chairman as to the proper interpretation of the legislation at issue.  Pages 1109-1112 is a letter from the Chairman, House Committee on Ways and Means, addressing the same legislative question that formed the basis for the constituent's problems.  All of this correspondence consists of taxpayer specific information concerning one taxpayer who had matters before the IRS.

(p) Pages 1113-1118:  These pages are being withheld in their entirety.  Pages 1113-1115 are a memorandum of a conference between the Congressman cited above in pages 1104-1112, persons representing his constituent, and persons from the IRS, including Arnold Levine.  The conference was held on November 3, 1969.  The memorandum consists of factual information about the constituent/taxpayer's transactions and the ruling that the taxpayer was requesting from the IRS, attaching a copy of the ruling request dated October 30, 1969.  (Pages 1116-1118 are the ruling request).

11

(q)  Page 1129:  This document is being withheld in its entirety.  This is an October 1969 memorandum from James Dring in the Legislation and Regulations Division to Arnold Levine in the Income Tax Division concerning ruling that had been requested from the IRS by a specific third party taxpayer. The memorandum contains the name of the taxpayer and discusses the position that Legislation and Regulations believed appropriate with respect the transaction that is the subject of the proposed ruling.

(r)  Page 1130:  This document is being withheld in its entirety.  This is an October 8, 1969, memorandum from Arnold Levine in the Income Tax Division to James Dring in the Legislation and Regulations Division requesting his consideration of a proposed ruling that had been requested from the IRS by a specific third party taxpayer.  The memorandum contains the name of the taxpayer and discusses the position that the Income Tax Division believes is appropriate with respect the transaction that is the subject of the proposed ruling.

(s)  Page 1132:  This document is being withheld in its entirety.  This is a memorandum from Arnold Levine in the Income Tax Division to John Nolan at Treasury, dated August 21, 1969, concerning the appropriate treatment of a transaction engaged in by a specific named third party taxpayer.

(t)  Pages 1133-1134:  This document is being withheld in its entirety. This is a memorandum from Mr. Kauder at Treasury to Mr. Nolan at Treasury concerning the proper tax treatment of a transaction engaged in by a specific third party taxpayer.  The document consists of an analysis of the specific transaction and the author's opinions as to how Treasury should view the

transaction.

(u) Pages 1135-1138:  This document is being withheld in its entirety. This is a memorandum from Mr. Nolan at Treasury to Mr. Kauder at Treasury concerning a request for analysis as to the proper tax treatment of a transaction engaged in by a specific third party taxpayer.  The document consists of an analysis of the specific transaction and the author's opinions as to how Treasury should view the transaction.

(v) Pages 1140-1141:  The document is being withheld in its entirety. This is a memorandum dated June 25, 1969, from James Dring, Legislation and Regulations Division, to John Withers, Interpretative Division concerning the proper tax treatment of a transaction engaged in by a specific third party taxpayer.  The document consists of an analysis of the specific transaction and the author's opinions as to how Legislation and Regulations would view the transaction.

(w) Pages 1144-1152:  The document is being withheld in its entirety. This is a memorandum dated June 13, 1969, from John Withers, Interpretative Division to James Dring, Legislation and Regulations Division, concerning the proper tax treatment of a transaction engaged in by a specific third party taxpayer.  The document consists of an analysis of the specific transaction and the author's opinions as to how the Interpretative Division would view the transaction.

(x) Pages 1162-1163:  This document is being withheld in its entirety. This is a "record of conference with taxpayers and their representatives"; a

13

document prepared by an IRS participant at a meeting between IRS personnel and representatives of a third party taxpayer.  The meeting was held on May 6, 1969, to discuss the tax ramifications of a specific transaction engaged in by a specific third party taxpayer.

(y)  Pages 1164-1165:  This document is being withheld in its entirety. This is a memorandum of a conference held on May 2, 1969 and attended by Commissioner Thrower, Deputy Commissioner Smith and R.J. Staken, J.W.S. Littleton, A. Levine, L. Fox and K Ruhe.  The purpose of the conference was to discuss a ruling that had been requested by a third party taxpayer concerning a specific transaction in which that taxpayer had engaged and portions of the document consist of an analysis of the transaction and how the IRS would view the tax implications of the transaction.

(z)  Pages 1204-1220:  This document is being withheld in its entirety. This is a memorandum from James Dring, Legislation and Regulations Division, to Paul McDaniel, Tax Legislative Counsel, dated March 17, 1969.  This memorandum was written in response to a request that the Office of Tax Legislative Counsel provide L & R with their opinion as to the taxable status of industrial development bonds to be issued by a third party taxpayer.  The document contains fact specific third party tax information as well as analysis and opinion as to the tax ramifications of the issuance.

(aa)  Page 1224:  This document is being withheld in its entirety.  This is a letter from a constituent to a United States Senator, dated January 14, 1969, asking for guidance as to the tax status of industrial development bonds.

(bb)  Page 1225:  Portions of this document have been withheld.  The withheld portions consist of the name and other identifying information of a specific taxpayer.

(cc)  Pages 1226-1228:  This document is being withheld in its entirety.  This is a memorandum dated January 9, 1969, from Mr. McDaniel to "Files" concerning the use of industrial development bonds by a specific third party taxpayer.  The document consists of factual information about the third party taxpayer and the transaction being contemplated by them.  There is opinion and analysis as to the IRS's position with respect to the transaction under contemplation.

(dd)  Page 1229:  This document has been withheld in its entirety.  This is a "record of conference taxpayers and their representatives"; a document prepared by an IRS participant at a meeting between IRS personnel and representatives of a third party taxpayer.  The meeting was held on January 13, 1969, to discuss the tax ramifications of a specific transaction engaged in by a specific third party taxpayer.

(ee)  Pages 1339-1342, 1345-1348, 1349-1352:  These documents have been withheld in their entirety.  These are copies of an undated, unsigned letter from the Chief, Individual Income Tax Branch to the representative of a third party taxpayer concerning a ruling request the taxpayer had made to the IRS with respect to certain industrial development bonds transactions.  The document contains detailed fact specific information about the transaction and provides the taxpayer with the IRS's opinion as to the proper tax treatment of the

15

transaction.

(ff)  Page 1359:  Portions of this page have been withheld.  The withheld portions consist of the name of a third party taxpayer.

(gg)  Page 1360:  Portions of this page have been withheld.  The withheld portions consist of the name and other identifying information, including detailed transaction information, or a third party taxpayer.

(hh)  Pages 1361-1367:  This document is being withheld in its entirety. This is a letter dated July 2, 1969, signed by the Chief, Individual Income Tax Branch to a third party taxpayer attaching a copy of the IRS response to a ruling request the taxpayer had made to the IRS with respect to certain industrial development bonds transactions.  The document contains detailed fact specific information about the transaction and provides the taxpayer with the IRS's opinion as to the proper tax treatment of the transaction.

(ii)  Page 1441:  This document is being withheld in its entirety.  This is a letter from a third party taxpayer to the Assistant Secretary of the Treasury dated August 29, 1968, requesting that Treasury/IRS provide the taxpayer with the answer to a specific question concerning the proper treatment of certain industrial development bond transactions.

(jj)  Pages 1445-1446:  This document is being withheld in its entirety. This is a memorandum dated July 22, 1968, from James Dring, Director, Legislation and Regulations Division to John Littleton, Director, Income Tax Division concerning industrial development bonds as they are being used in a specific state.  The memorandum relays the concerns of a representative of the

16

state as they were expressed in a meeting between the state representatives and Treasury/IRS personnel and requests an expedited ruling to answer questions posed to the IRS by the state.

(kk)  Pages 2018-2020:  This document is being withheld in its entirety. This is a letter dated July 19, 1971, signed by the Director, Individual Income Tax Branch to a third party taxpayer concerning a ruling request the taxpayer had made to the IRS with respect to certain industrial development bonds transactions.  The document contains detailed fact specific information about the transaction and provides the taxpayer with the IRS's opinion as to the proper tax treatment of the transaction.

(ll)  Pages 2021-2024:  These two documents are being withheld in their entirety.  These are two copies of an unsigned memorandum from 1973 from James Dring, Director, Legislation and Regulations, to John Withers, Director, Interpretative Division, responding to a request for assistance as to the proper treatment of specific transactions engaged in by utilities located in a specific city within the United States.  These documents summarize the positions the IRS has taken when similar questions have arisen in past transactions and provides an opinion as to the proper treatment of the transaction that is the subject to the instant request.

(mm)  Pages 2025-2036:  These documents have been withheld in their entirety.  These are copies of three signed letters from the Chief, Individual Income Tax Branch to the representative of a third party taxpayer concerning ruling three requests the taxpayer had made to the IRS with respect to certain

industrial development bonds transactions.  (The document at pages 2025-2029 is dated March 24, 1971; 2030-2034 is dated April 26, 1971; and 2035-2036 is dated May 20, 1971).  These documents contain detailed fact specific information about the transactions and provide the taxpayer with the IRS's opinion as to the proper tax treatment of these transactions.

(nn)  Pages 2053-2055:  This document is being withheld in its entirety. This is handwritten notes from a discussion of personnel from the IRS offices of Interpretative, Legislation and Regulations, and the Tax Legislative Counsel concerning the proper tax treatment with respect to transactions entered into by a specific third party taxpayer.  This document contains specific information about the transaction and offers opinions as to how the IRS may want to treat the transaction.

(oo)  Pages 2056, 2058, 2061-2062, 2064, 2066, 2342-2344:  Portions of each of these pages are withheld.  These pages consist of the "Regulations History Record" that was maintained by the attorney within the Legislation and Regulations Division assigned to T.D. 7199.  The withheld portions consist of names and other identifiers of third party taxpayers.

(pp)  Pages 2072-2075:  This document is being withheld in its entirety. This a undated, signed copy of a letter from James Dring, Director, Legislation and Regulations Division to the Acting Assistant Attorney General for the Antitrust Division at the Department of Justice providing a response to a request for advice as whether a specific transaction entered into by a specific third party taxpayer would be deemed to be affected by the rules on industrial development

18

bonds.

(qq)  Pages 2076-79:  These pages are being withheld in their entirety.
Page 1076 is a letter dated June 23, 1972, from the Acting Assistant Attorney
General for the Antitrust Division at the Department of Justice to James Dring,
Director, Legislation and Regulations Division, requesting assistance with a
determination of the proper tax treatment of a transaction that was pertinent to
ongoing litigation.  Pages 2077-2079 is a factual summary of the pertinent
transaction that the Assistant Attorney General had provided to the IRS.

(rr)  Pages 2149-2150:  This document is being withheld in its entirety.
This is a signed memorandum, dated June 9, 1972, from James Dring, Director,
Legislation and Regulations Division to John Chapoton, Tax Legislative Counsel,
concerning the proper interpretation of a definition pertinent to industrial
development bonds.  The document references a certain governmental entity
and provides opinions and analysis as to whether such an entity would be
entitled to exempt tax status with respect to the issuance of industrial
development bonds.

(ss)  Page 2151:  Portions of this page have been withheld.  The withheld
information consists of the name of a third party taxpayer.

(tt)  Page 2157-2159:  Portions of this document have been withheld.
Some of the withheld portions consist of the name of a third party taxpayer.

(uu)  Page 2160:  This document has been withheld in its entirety.  This is
an unsigned memorandum dated January 18, 1972, from Mr. Ritter to Mr.
Chapoton concerning a ruling that has been requested by a third party taxpayer

19

and providing preliminary conclusions reached in the draft response to the request and asking that Mr. Chapoton's office weigh in on their views as to the proper response to the request.

(vv)  Pages 2163-2172:  This document is being withheld in its entirety. This is a memorandum to files dated April 7, 1971 authored by IRS employee Arthur Schwartz concerning a meeting attended by representatives from IRS and Treasury at which several transactions engaged in by third party taxpayers was discussed and preliminary decisions were made as to the proper tax treatment of each transaction.

(ww)  Pages 2311-2312:  Portions of this document have been withheld. The withheld portions consist of a discussion of proposed changes to the draft proposed regulation and a discussion as to why such changes are believed necessary and the possible impact such changes may have on specific types of transactions and specific named taxpayers.

(xx)  Pages 2315-2317:  This document is being withheld in its entirety. This is a memorandum dated May 21, 1970 from the Tax Legislative Counsel to the Chief Counsel providing details as to how outside bond counsel are interpreting certain provisions of the regulations under section 103 and alerting the Chief Counsel as to the impact such interpretations could have in on-going tax matters.

(yy)  Pages 2318-2320:  This document is being withheld in its entirety. This is a letter from the Chief, Individual Income Tax Branch to a third party taxpayer in response to a request for a ruling.  This document contains

20

information about the third party taxpayer's specific transaction as well as the IRS response as to the proper tax treatment of such transaction.

(zz)  Pages 2321-2328:  This document is being withheld in its entirety. This is a signed memorandum dated March 31, 1970, from the Chief Counsel to the Director, Income Tax Division concerning industrial development bonds issued by a specific third party taxpayer.  This document contains detailed information about the transactions in which the third party taxpayer engaged and re-evaluates prior positions the IRS has taken with respect to these transactions.

<u>EXEMPTION (b)(5)</u>

17.  The Government is also withholding certain information in records that are responsive to plaintiff's FOIA request pursuant to subsection (b)(5) of the FOIA.  FOIA subsection (b) (5) exempts from disclosure "inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than agency in litigation with the agency."  This exemption has been construed to encompass the attorney-client privilege, the work product doctrine, and the deliberative process privilege.

18.  Certain of the information being withheld pursuant to FOIA exemption (b) (5) falls within the deliberative process privilege.  The Government is withholding drafts of documents and other records containing advisory opinions and recommendations generated during the course of Chief Counsel attorneys' review and consideration of legal guidance in conjunction with agency positions vis-à-vis guidance associated with 1.103-8(f), T.D. 7199.  Furthermore, to the extent other documents reflect the opinions or recommendations of agency

personnel involved in the drafting and review of such guidance, that information is also subject to the protections of the deliberative process privilege.  All of the records being withheld pursuant to the deliberative process privilege are predecisional.  These documents were prepared by components within the agency, primarily within Chief Counsel, to assist executives within the agency and at Treasury that issue regulations before reaching final decisions on how certain issues would be treated in this guidance that culminated in this regulation.  The withheld information is also deliberative as it contains opinions and/or recommendations reflecting "the give-and-take" of the agency's deliberative processes leading to the issuance of guidance on industrial development bonds.  The disclosure of these documents would expose the decision making processes of the agency, including the Office of Chief Counsel, in such a way as to discourage candid discussion within the agency and undermine its ability to perform its tax administration function.  Further, with respect to the final decisions that were made by various executives within the agency regarding the positions that should be taken with respect to industrial development bonds, final decisionmakers did not adopt or incorporate the deliberations contained in these withheld documents by reference.  Further, to the extent any factual information was so inextricably connected to the deliberative material that its disclosure would cause harm to the agency's deliberations, the information was withheld.  Also, when documents contained selective facts upon which analysis, opinions and recommendations were made, such that they too, reflect agency deliberations, those facts were also withheld.

Finally, the records withheld under FOIA exemption (b)(5) and the deliberative

process privilege in the instant litigation were not disclosed outside the agency or

the Department of Treasury.

19.  The following are those documents that have been withheld, either in

full or in part, pursuant to Exemption (b)(5) and the deliberative process privilege:

(a) Pages 28, 33, 37 and 66:  These pages have been withheld in part.

The withheld portions consist of handwritten notations made in the margins and

these portions have been redacted from each of these pages.  These pages are

publicly available documents consisting in their entirety of replies to taxpayers

who have made requests to the IRS for Private Letter Rulings [PLRs].  The

portions that have been redacted from each of these pages are the author's

summation of the specific transactions that were at issue in each PLR and

identification of the specific details about the transactions that the author

believed to be significant in as to the treatment of the transactions vis-à-vis

regulations concerning industrial development bonds.

(b) Pages 184-187:  These pages have been withheld in their entirety and

consist of a memorandum dated July 7, 1971, from C. Willis Ritter to "Files"

concerning a question that a specific third party taxpayer had presented to the

IRS about a specific facility in which the taxpayer was involved and whether

bonds issued to build that facility be exempt under the Internal Revenue Code

[I.R.C.] and the proposed regulations, T.D. 7199.  Certain portions of this

memorandum are predecisional in that they reflect the author's opinions as to

the most appropriate treatment of the taxpayer's situation for tax purposes,

weighing the pros and cons to the IRS should the agency chose one course of treatment over another with respect to the issue of whether the issued bonds would be exempt.  There is no indication that the author's opinions reflected a final agency position and it is possible that the memorandum was placed in the T.D. 7199 file merely so that these types of transactions could be taken into consideration as the regulations were being formulated.

(c)  Pages 188-189:  This document has been withheld in part.  The document is a memorandum to file entitled "In re:  Industrial Development Bonds (§ 1.103-8(a)(5))".  The withheld portion on page 188 consists of a discussion of specific items summarized in a chart (the chart is located on page 189).  This discussion and chart reflects the author's opinions as to the spectrum of possibilities with respect to resolution of issues arising under paragraph (a)(5) of § 1.103-8 dependant upon the timing of facility completion.

(d)  Pages 190-193, 2068-2071:  These documents have been withheld in their entirety.  These are two copies of a "Memorandum to File" dated September 7, 1972, written by Kenneth Iltz entitled "Corrections to T.D. 7199 (relating to industrial development bonds)".  It consists of the author's impressions as to why and how certain revisions to T.D. 7199 came to be viewed as necessary after its publication on August 3, 1972 as they affected a specific third party taxpayer.

(e)  Pages 469, 478-480, 489-490, 496, 502-510, 518- 519, 541, 546, 567, 571, 578, 585-589, 594, 596, 600-601, 604, 612, 620, 624, 626-627, 647-648, 651, 654, 657-658, 662, 664-670, 673-676, 687-690, 693-701, 703, 718-

24

720, 724, 786-789, 797:  Each of these pages have been withheld in part as handwritten notations made in the margins have been redacted from portions of each of these pages.  These documents consist in their entirety of comments received from the public in response to the proposed regulation concerning industrial development bonds that had been printed in the *Federal Register* on January 14, 1969.   The material redacted from portions of these documents are handwritten notations made in the margins of the documents that consist of the author's opinions and assessments as to the merits of the arguments and analysis in the comments.

(f)  Pages 828-852, 883-1015, 1028-1042, 1175-1203, 1332-1333, 1353-1356, 1378-1440, 1677-1687, 2042-2052, 2080-2148, 2313-2314, 2330, 2333-2336:  These documents have been withheld in their entirety.  These documents consist in their entirety of drafts, or portions of drafts, of the proposed regulation on industrial development bonds as it was contemplated for promulgation under section 103 of the Internal Revenue Code.

(g)  Pages 853-860:  This document has been withheld in its entirety.  It is a memorandum from the Legislation and Regulations Division to the Assistant Secretary of the Treasury transmitting a draft proposed regulation and detailing the policy questions that had been placed before an entity described as the "Policy Committee" and how the Committee proposed to address such questions in the draft proposed regulation.

(h)  Pages 861-864:  This document has been withheld in its entirety.  It is an unsigned "Memorandum to File" dated June 8, 1972 authored by Marcus

Blumkin, Technical Assistant to the Director, Legislation and Regulations Division, and consists of a summary of a telephone conversation Mr. Blumkin had with a person not employed by the Government. The memorandum consists of Mr. Blumkin's impressions of the significant issues raised by the outside party as well as his impressions as to analysis provided to him by the outside party.

(i) Pages 866-868: This document has been withheld in its entirety. It is an unsigned "Memorandum to File" dated December 23, 1970, related to a provision made within the draft proposed regulation with respect to a transaction entered into by a specific third party taxpayer. It consists of the author's impressions and opinions as to how and why certain provisions of the proposed draft regulation were tailored for the benefit of this taxpayer.

(j) Page 869: A portion of this page has been withheld. The document is a memorandum dated February 3, 1977, from Marcus B. Blumkin, Technical Assistant to the Director, Legislation and Regulations Division to K. Martin Worthy, Chief Counsel entitled "Industrial Development Bond Regulations— Memorandum to the File". The withheld portion consists of the Blumkin's opinions as to the validity of certain conclusions and an assessment as to whether the Chief Counsel should focus on issues raised in another memorandum dated December 23, 1970.

(k) Page 880: A portion of this page has been withheld. This page consists of a memorandum from John Nolan, the Acting Assistant Secretary at Treasury to K. Martin Worthy, Chief Counsel dated September 11, 1970 and

entitled "Industrial Development Bond Regulations".  The withheld portion

consists of Mr. Nolan's opinions and assessments as to the importance of the

issuance of the regulation and how the issuance of the regulation will affected

him in his role of Assistant Secretary.

(l)  Pages 1019-1022:  This document has been withheld in its entirety.

This is a "Conference Memorandum" about a meeting that was held in

September 1970, at the request of certain specific third party taxpayers

concerning industrial development bonds.  The memorandum details specific

problems these taxpayers anticipate as the result of the implementation of the

proposed regulation and proposals made by these taxpayers in order to alleviate

their concerns with respect to these perceived problems.  There is discussion as

to the IRS/Treasury's likely response to these taxpayers' concerns as well as

some discussion as to proposed legislative changes sought by these third party

taxpayers and the IRS/Treasury's assessment as to whether such legislative

changes have merit and are likely to be implemented.

(m)  Pages 1023-1027:  This document has been withheld in its entirety.

This is a memorandum from Meade Whitaker, the Tax Legislative Counsel at

Treasury to an entity described as the "Policy Committee" summarizing certain

positions taken with respect to policy decisions made for the draft proposed

regulation and containing specific recommendations for the "Policy Committee"

to consider as it reflects upon these proposed positions.

(n)  Pages 1043-1046, 1171-1174, 1335-1338, 1343-1344:  These

documents have been withheld in their entirety.  Pages 1043-1046 and 1171-

1174 are copies of a memorandum dated April 16, 1969, from the Commissioner

to the Assistant Secretary of the Treasury concerning T.D. 7199; pages 1335-

1338 is an undated, unsigned draft of this memorandum; pages 1343-1344

consist of the 3rd and 4th pages of the memorandum and page 4, the final page is

unsigned.  The memorandum accompanies the proposed regulation and

contains a summary of suggestions that were made with respect to the proposed

regulation along with a detailed discussion as to why certain proposals were

adopted by the IRS and certain other proposals were not adopted by the IRS

and was provided to the Department of Treasury to assist with their

decisionmaking process as to whether the draft proposed regulation required

further revision.

(o) Pages 1076-1079:  This document is being withheld in its entirety.  It

is an unsigned, undated draft memorandum prepared within the Legislation and

Regulations Division and not addressed to any party.  The stated purpose of the

memorandum is to serve as an aid in the construction and interpretation of

certain terms in connection with the development of draft proposed regulations

under section 103(c)(4)(E).  There is a brief discussion of a ruling issued to a

specific third party taxpayer.

(p) Pages 1088 and 1089:  Portions of these two documents have been

withheld.  These are two copies of a one page memorandum from Mr. Nolan,

Assistant Secretary of Treasury to Mr. Kennedy, the Secretary of the Department

of Treasury concerning a revenue ruling with respect to bonds that are to be

issued by a specific taxpayer.  The withheld portions identify the taxpayer by

28

name and, certain of the withheld portions contain analysis as to the effect

existing tax law would have on the taxpayers liabilities.

(q)  Pages 1099-1103:  This document is being withheld in its entirety. This is a memorandum from the Tax Legislative Counsel to the Director, Legislation and Regulations Division concerning proposed industrial development bond regulations.  The letter contains detailed discussions of policy areas that the Tax Legislative Counsel believes should be considered by the Legislation and Regulations Division when they making revisions to the draft proposed regulation and contains taxpayer specific examples as to how certain determination with respect to certain policy considerations may play out with respect to these third party taxpayers.

(r)  Page 1104: This document has been withheld in its entirety.  This is a memorandum of a telephone conversation dated December 3, 1969, concerning a conversation in which Arnold Levine, Income Tax Division, and a Congressman participated.  The conversation concerned a specific issue raised by one of the Congressman's constituents who had asked the Congressman to intervene with the IRS on his behalf.  The discussion centered on what actions the constituent could take in order to satisfy certain legislative requirements.

(s)  Page 1129:  This document is being withheld in its entirety.  This is an October 1969, memorandum from James Dring in the Legislation and Regulations Division to Arnold Levine in the Income Tax Division concerning a ruling that had been requested from the IRS by a specific third party taxpayer. The memorandum contains the name of the taxpayer and discusses the position

that the Legislation and Regulations Division believed appropriate with respect

the transaction that is the subject of the proposed ruling.

(t)  Page 1130:  This document is being withheld in its entirety.  This is an October 8, 1969, memorandum from Arnold Levine in the Income Tax Division to James Dring in the Legislation and Regulations Division requesting his consideration of a proposed ruling that had been requested from the IRS by a specific third party taxpayer.  The memorandum contains the name of the taxpayer and discusses the position that the Income Tax Division believes is appropriate with respect the transaction that is the subject of the proposed ruling.

(u)  Page 1132:  This document is being withheld in its entirety.  This is a memorandum from Arnold Levine in the Income Tax Division to John Nolan at Treasury, dated August 21, 1969, concerning the appropriate treatment of a transaction engaged in by a specific named third party taxpayer.

(v)  Pages 1133-1134:  This document is being withheld in its entirety. This is a memorandum from Mr. Kauder at Treasury to Mr. Nolan at Treasury concerning the proper tax treatment of a transaction engaged in by a specific third party taxpayer.  The document consists of an analysis of the specific transaction and the author's opinions as to how Treasury should view the transaction.

(w)  Pages 1135-1138:  This document is being withheld in its entirety. This is a memorandum from Mr. Nolan at Treasury to Mr. Kauder at Treasury concerning a request for analysis as to the proper tax treatment of a transaction engaged in by a specific third party taxpayer.  The document consists of an

30

analysis of the specific transaction and the author's opinions as to how Treasury should view the transaction.

(x)  Page 1139:  Portions of this document have been withheld.  The document is a memorandum from James Dring, Director, Legislation and Regulations Division to Paul McDaniel, Office of Tax Legislative Counsel dated June 25, 1969 and entitled "Notice of Proposed Rule Making – Industrial Development Bonds".  This memorandum was written in response to an inquiry to the Assistant Commissioner (Compliance) as to the feasibility of proposed amendments to the regulation.  The withheld portions consist of recommendations as to how the regulations should specify that taxpayers maintain records associated with their transactions in order to secure Compliance's agreement to the proposed regulations.

(y)  Pages 1140-1141:  The document is being withheld in its entirety. This is a memorandum dated June 25, 1969, from James Dring, Legislation and Regulations Division, to John Withers, Interpretative Division concerning the proper tax treatment of a transaction engaged in by a specific third party taxpayer.  The document consists of an analysis of the specific transaction and the author's opinions as to how Legislation and Regulations would view the transaction.

(z)  Page 1143:  Portions of this document have been withheld.  The document is a memorandum from the Deputy Assistant Commissioner (Compliance) to the Director, Legislation and Regulations Division date-stamped received June 24, 1969, and entitled "Proposed Regulations Section 1.103-

10(b)(2)(iv)(5)".  This memorandum was written in response to an inquiry as to the views of Compliance as to the feasibility of certain provisions in the proposed regulation.  The withheld portions consist of recommendations as to how the regulations should specify that taxpayers maintain records from their transactions in order to secure Compliance's agreement to the proposed regulations.

(aa) Pages 1144-1152:  The document is being withheld in its entirety.  This is a memorandum dated June 13, 1969, from John Withers, Interpretative Division to James Dring, Legislation and Regulations Division, concerning the proper tax treatment of a transaction engaged in by a specific third party taxpayer.  The document consists of an analysis of the specific transaction and the author's opinions as to how the Interpretative Division would view the transaction.

(bb) Page 1153:  Portions of this document have been withheld.  This document is a memorandum from James Dring in the Legislation and Regulations Division to IRS employees Leon Green and Arnold Levine dated June 10, 1969, and entitled "Proposed regulations § 1.103-10(b)(2)(iv)(5)".  The withheld portions concern a memorandum from Mr. McDaniel, and consist of the author's assessment and analysis of the issues raised by Mr. McDaniel with respect to the proposed regulation; specifically what requirements the IRS would impose upon affected taxpayers and how the IRS would make determinations as to whether those taxpayers had met the requirements.

(cc) Page 1154:  Portions of this document have been withheld.  This

32

document is a memorandum from Paul McDaniel, Office of Tax Legislative
Counsel to James Dring, Director, Legislation and Regulations Division, dated
June 6, 1969 and entitled "Industrial Development Bond Regulations".  The
memorandum referenced a letter that had been received from a taxpayer.  The
withheld portion consists of the author's assessment as the validity of the points
raised by the taxpayer with respect to the relaxation of certain of the
requirements in the proposed regulation.

    (dd)  Pages 1158-1160:  This document is being withheld in its entirety.
This is a memorandum of a conference held on May 9, 1969, concerning
proposals to adopt certain positions in the drafting of the regulation on industrial
development bonds.  The participants were the IRS Commissioner, Donald
Dawkins, John Noland and Paul McDaniel from Treasury and James Dring  and
Lawrence Fox from IRS Chief Counsel.  The discussion summarizes comments
made by the public with respect to a specific aspect of the proposed regulation
and makes certain recommendations for Treasury to consider when reviewing
the regulation for finalization.

    (ee)  page 1161:  Portions of this document have been withheld.  This
document is a memorandum from H. Lawrence Fox, Assistant Chief Branch 2,
Legislation and Regulations Division to Arnold Levine, Assistant to the Director,
Income Tax Division dated May 12, 1969 and entitled "Proposed Treasury
decision concerning industrial development bonds".  The withheld portions of this
document consist of the author's opinion as to the meaning of certain portions of
the regulation as perceived by certain functions within the IRS and his

1  assessment as to whether the issue should be brought to the attention of

2  decision makers prior to the promulgation of the regulation.

3      (ff)  Pages 1164-1165:  This document is being withheld in its entirety.

4  This is a memorandum of a conference held on May 2, 1969 and attended by

5  Commissioner Thrower, Deputy Commissioner Smith and R.J. Staken, J.W.S.

6  Littleton, A. Levine, L. Fox and K Ruhe.  The purpose of the conference was to

7  discuss a ruling that had been requested by a third party taxpayer concerning a

8  specific transaction in which that taxpayer had engaged and portions of the

9  document consist of an analysis of the transaction and how the IRS would view

10  the tax implications of the transaction.

11

12      (gg)  Page 1166:  This document is being withheld in its entirety.  This is a

13  memorandum to Commissioner Thrower (the author is not identified) dated April

14  16, 1969, and concerns a position the IRS was contemplating taking with respect

15  to the development of proposed regulation on industrial development bonds.

16  The author concludes that the IRS had options it needed to explore with respect

17  to the specific issues, discusses the pros and cons of these positions and asks

18  that the Commissioner consider these issues when making any determinations.

19      (hh)  Pages 1167-1168:  This document is being withheld in its entirety.

20  This is a memorandum from James Dring, Legislation and Regulations Division,

21  to Commissioner Thrower responding to a request from the Commissioner for

22  the Division's analysis as to the proper interpretation of certain language in

23  legislation on  industrial development bonds, section 103(c)(2)(A).

24

25      (ii)  Page 1170:  Portions of this document have been withheld.  This

26

27

34

document in a memorandum from the Director, Legislation and Regulations

Division to the Acting Chief Counsel dated April 8, 1969 and entitled "Treasury

decision—Industrial development bonds". The portion of the document being

withheld consists of a discussion of certain provisions that have been deleted

from the draft proposed regulation and an assessment as to why it was

necessary to delete these provisions.

    (jj) Pages 1204-1220: This document is being withheld in its entirety.

This is a memorandum from James Dring, Legislation and Regulations Division,

to Paul McDaniel, Tax Legislative Counsel, dated March 17, 1969. This

memorandum was written in response to a request that the Office of Tax

Legislative Counsel provide L & R with their opinion as to the taxable status of

industrial development bonds to be issued by a third party taxpayer. The

document contains fact specific third party tax information as well as analysis

and opinion as to the tax ramifications as impacted by the circumstances of the

issuance.

    (kk) Pages 1226-1228: This document is being withheld in its entirety.

This is a memorandum dated January 9, 1969, from Mr. McDaniel to "Files"

concerning the use of industrial development bonds by a specific third party

taxpayer. The document consists of factual information about the third party

taxpayer and the transaction being contemplated by them. There is opinion and

analysis as to the IRS's position with respect to the transaction under

contemplation.

    (ll) Pages 1230-1234: This document is being withheld in its entirety.

This is a memorandum, dated January 2, 1969, from Mr. McDaniel to government employee Mr. Surrey consisting of an assessment of the intended purpose of the proposed regulation being drafted under section 103 and containing a summary of the principal issues encountered during the formulation of the proposed regulation as well as the IRS's intended response to these issues.

(mm)  Page 1235:  Portions of this page have been withheld.  The withheld portions consist of a discussion of proposed revisions to the draft proposed regulation and the author's explanation as to why certain considered positions should not be adopted by the agency.

(nn)  Page 1239:  A portion of this page has been withheld.  The withheld portions consist of the author's recommendations as to specific issues that should be addressed in a draft letter to a specific third party entity.

(oo)  Page 1240:  This document has been withheld in its entirety.  This is a memorandum from the Director, Income Tax Division to the Director, Legislation and Regulations Division dated received December 10, 1968, concerning an informal review of proposed regulations on industrial development bonds and offering comments and recommendations with respect to the appropriate approach to take with certain aspects of the proposed regulation as it moved through the drafting process.

(pp)  Pages 1330-1331:  This document has been withheld in its entirety. This is a memorandum of a meeting dated June 6, 1969, involving personnel from the IRS Division of Audits and the Appraisal Section and from the Federal

36

1    Power Commission concerning the proscribed accounting treatment of nuclear

2    fuel element costs by public utilities and how the accounting is affected by

3    section 103(c)(4)(E) of the Code.

4        (qq)  Pages 1339-1342, 1345-1348, 1349-1352:  These documents have

5    been withheld in their entirety.  These are copies of an undated, unsigned letter

6    from the Chief, Individual Income Tax Branch to the representative of a third

7    party taxpayer concerning a ruling request the taxpayer had made to the IRS

8

9    with respect to certain industrial development bonds transactions.  The

10   document contains detailed fact specific information about the transaction and

11   provides the taxpayer with the IRS's opinion as to the proper tax treatment of the

12   transaction.

13       (rr)  Pages 1357-1358:  This document is being withheld in its entirety.

14   This is a memorandum dated January 6, 1970, from the Chief Counsel to James

15

16   Dring, Legislation and Regulations Division, concerning the appropriate meaning

17   of a certain type of facility for purposes of Code section 103(c)(4)(E).  This

18   memorandum makes suggestions as to two possible alternative meanings to the

19   relevant term and asks that Legislation and Regulations take these possible

20   alternative meanings into consideration as they draft proposed regulations

21   concerning industrial development bonds.

22       (ss)  Pages 1361-1367:  This document is being withheld in its entirety.

23   This is a letter dated July 2, 1969, signed by the Chief, Individual Income Tax

24

25   Branch to a third party taxpayer attaching a copy of the IRS response to a ruling

26   request the taxpayer had made to the IRS with respect to certain industrial

27

28
                                         37

development bonds transactions. The document contains detailed fact specific information about the transaction and provides the taxpayer with the IRS's opinion as to the proper tax treatment of the transaction.

(tt) Pages 1445-1446: This document is being withheld in its entirety. This is a memorandum dated July 22, 1968, from James Dring, Director, Legislation and Regulations Division to John Littleton, Director, Income Tax Division concerning industrial development bonds as they are being used in a specific state. The memorandum relays the concerns of a representative of the state as they were expressed in a meeting between the state representatives and Treasury/IRS personnel and requests an expedited ruling to answer questions posed to the IRS by the state.

(uu) Pages 2018-2020: This document is being withheld in its entirety. This is a letter dated July 19, 1971, signed by the Director, Individual Income Tax Branch to a third party taxpayer concerning a ruling request the taxpayer had made to the IRS with respect to certain industrial development bonds transactions. The document contains detailed fact specific information about the transaction and provides the taxpayer with the IRS's opinion as to the proper tax treatment of the transaction.

(vv) Pages 2021-2024: These two documents are being withheld in their entirety. These are two copies of an unsigned memorandum from 1973 from James Dring, Director, Legislation and Regulations to John Withers, Director, Interpretative Division, responding to a request for assistance as to the proper treatment of specific transactions engaged in by utilities located in a specific city

38

within the United States.  These documents summarize the positions the IRS

has taken when similar questions have arisen in past transactions and provides

an opinion as to the proper treatment of the transaction that is the subject to the

instant request.

(ww)  Pages 2053-2055:  This document is being withheld in its entirety.

This is handwritten notes from a discussion of personnel from the IRS offices of

Interpretative, Legislation and Regulations, and the Tax Legislative Counsel

concerning the proper tax treatment of a transaction entered into by a specific

third party taxpayer.  This document contains specific information about the

transaction and offers opinions as to how the IRS may want to treat the

transaction.

(xx)  Pages 2057, 2059, 2062-2066, 2342-2344:  Portions of these pages

have been withheld.  These pages consist of the "Regulations History Record"

that was maintained by the attorney within the Legislation and Regulations

Division assigned to T.D. 7199.  The withheld portions consist of summaries of

specific discussions about how certain issues could be addressed and/or

resolved in the draft proposed regulation.

(yy)  Pages 2077-2079:  These pages are being withheld in their entirety.

This is a factual summary of the pertinent transaction that the Acting Assistant

Attorney General, Antitrust Division, Department of Justice had provided to the

IRS to accompany page 2076.

(zz)  Pages 2149-2150:  This document is being withheld in its entirety.

This is a signed memorandum, dated June 9, 1972, from James Dring, Director,

Legislation and Regulations Division to John Chapoton, Tax Legislative Counsel, concerning the proper interpretation of a definition pertinent to industrial development bonds. The document references a certain governmental entity and provides opinions and analysis as to whether such an entity would be entitled to exempt tax status with respect to the issuance of industrial development bonds.

(aaa) Pages 2152-2156: This document is being withheld in its entirety. This is an undated, unsigned (no author or intended recipient is identified) draft memorandum concerning the proper tax treatment of industrial development bonds when issued by non-specific governmental entities. This document contains the author's analysis and opinions as to whether such transactions would enjoy tax exempt status.

(bbb) Page 2157-2159: Portions of this document have been withheld. Some of the withheld portions consist of discussions as to the proper tax treatment of certain transactions entered into by a taxpayer who had come to the IRS requesting a PLR and how the author perceives that the proposed regulation should be interpreted with respect to the issue presented.

(ccc) Page 2160: This document has been withheld in its entirety. This is an unsigned memorandum dated January 18, 1972, from Mr. Ritter to Mr. Chapoton concerning a ruling that has been requested by a third party taxpayer and providing preliminary conclusions reached in the draft response to the request and asking that Mr. Chapoton's office weigh in on their views as to the proper response to the request.

40

(ddd)  Page 2162:  Portions of this document have been withheld.  The withheld portions consist of the author's opinion that the draft proposed regulation should be redrafted in a specific way to allow for the application of certain rules with respect to certain types of transactions that are affected by the proposed regulation.

(eee)  Pages 2163-2172:  This document is being withheld in its entirety. This is a memorandum to files dated April 7, 1971 authored by Arthur Schwartz concerning a meeting attended by representatives from IRS and Treasury at which several transactions engaged in by third party taxpayers was discussed and preliminary decisions were made as to the proper tax treatment of each transaction.

(fff)  Pages 2310:  Portions of this document have been withheld.  The withheld portions consist of a discussion of specific changes that have been made to the draft proposed regulation with respect to certain types of transactions that are affected by the draft regulation.

(ggg)  Pages 2311-2312:  Portions of this document have been withheld. The withheld portions consist of a discussion of proposed changes to the draft proposed regulation and a discussion as to why such changes are believed necessary and the possible impact such changes may have on specific types of transactions and specific taxpayers.

(hhh)  Pages 2315-2317:  This document is being withheld in its entirety. This is a memorandum dated May 21, 1970 from the Tax Legislative Counsel to the Chief Counsel providing details as to how outside bond counsel are

interpreting certain provisions of the regulations under section 103 and alerting the Chief Counsel as to the impact such interpretations could have in on-going tax matters.

(iii)  Page 2329:  Portions of this page have been withheld.  The withheld portions consist of a discussion of proposed specific changes to the draft regulation in light of proposals made to the IRS by the Joint Committee on Taxation.

(jjj)  Pages 2337-2338:  This document is being withheld in its entirety. This is a signed memorandum dated January 6, 1970 from the Chief Counsel to James Dring, Legislation and Regulations Division, concerning the proper definition of certain types of facilities at issue in regulations promulgated with respect to industrial revenue bonds relaying the Chief Counsel's understanding as to what such definition should entail so that the Legislation and Regulations Division could take this into consideration as they were drafting the regulations.

<u>EXEMPTION (b)(6)</u>

20.  FOIA subsection (b)(6) permits an agency to withhold all information about individuals in "personnel and medical and similar files" where the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."  In this case, the information being withheld under exemption (b)(6), consists of information which would identify an individual taxpayer who had contacted a Congressional representative with specific concerns about issues related to industrial development bonds.  Accordingly, since this information is of a personal nature, this information meets the

42

threshold requirement of subsection (b)(6).   Further, such information has little

or no public interest and, if released, would violate a viable privacy interest of the

individual subject of the information.

21.  The following documents have been withheld, either in full or in part,

pursuant to FOIA exemption 6.

(a).  Pages 1221-1223:  Portions of these pages have been withheld in

part pursuant to Exemption 6.  The withheld portions consist of identifying

information of a third party who contacted a Congressional representative

concerning issues presented by industrial development bonds.

(b)  Pages 1443-1444:  This document is being withheld in its entirety.

This is a letter from a third party to a member of Congress and relays to the

Congressman the third party's concerns with the proposed regulations on

industrial development bonds.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _Mary 9_, 2006.



DEBORAH LAMBERT-DEAN
Office of Chief Counsel
(Disclosure & Privacy Law)
Internal Revenue Service
Washington, D.C.  20224

43

Barbara T. Kaplan
Tel. (212) 801-9250
Fax (212) 801-6400
kaplanb@gtlaw.com

August 25, 2005

**VIA CERTIFIED MAIL**

IRS FOIA Request
Headquarters Disclosure Office
CL:GLD:D
1111 Constitution Avenue, N.W.
Washington, D.C. 20224

     Re:    <u>Freedom of Information Act Request</u>

Dear Sir or Madam:

     Under the provisions of the Freedom of Information Act, 5 U.S.C. § 552 and the regulations thereunder, I request copies of any and all documents, reports, records, memoranda, correspondence, notes, research, or other written or electronic materials, including public comments and hearing transcripts, that pertain to or were considered, reviewed, or referred to by Internal Revenue Service or Treasury Department personnel in connection with the promulgation, and any amendments thereto, of Treasury Regulation Section 1.103-8(f), T.D. 7199 (copy attached).

     For purposes of responding to this request, the term "document" or "record" includes, without limitation, memoranda, agreements, papers, correspondence, notes, studies, graphs, diagrams, photographs, charts, projections, tabulations, analyses, questionnaires and responses, work papers, summaries, data sheets, reports, statistical or informational accumulations, data processing cards or worksheets, computer stored and generated documents, computer databases, computer disks and formats, machine readable electronic files or records maintained on a computer, telexes, telegrams, electronic mail (commonly referred to as "e-mail"), and similar or related documents and materials.

     Please send copies of these records to Barbara T. Kaplan, Esq., Greenberg Traurig, LLP, 200 Park Avenue, New York, New York 10166. I agree to pay any search, duplicating and review fees.

     Should you determine that any portion of the records or information I request is exempt, please supply me with a copy of the portion considered nonexempt. If all of any

Ex. A.

Internal Revenue Service
August 25, 2005
Page 2

part of this request is denied, please notify me of the specific exemption(s) you think justifies your refusal to release the information.

If you have any questions, please contact me at 212-801-9250. Thank you in advance for your assistance.

Sincerely,


Barbara T. Kaplan




Enclosure

**Federal Regulations**

# Reg § 1.103-8. Interest on bonds to finance certain exempt facilities.

**Caution:** Reg. §1.103-8, following, was issued under Code section 103 before the related provisions of that Code section were deleted by P.L. 99-514 (10/22/86). Provisions similar to, but not necessarily identical to, the provisions deleted from Code section 103 now appear in Code section 142.

**Caution:** The Treasury has not yet amended Reg § 1.103-8 to reflect changes made by P.L. 107-16

\* \* \*

**(f) Certain public utility facilities.**

**(1) *General rule.***

(i) Section 103(b)(4)(E) provides that section 103(b)(1) shall not apply to obligations issued by a State or local governmental unit which are part of an issue substantially all of the proceeds of which are to be used to provide sewage disposal facilities, solid waste disposal facilities, or facilities for the local furnishing of electric energy or gas. In order to qualify under section 103(b)(4)(E) as an exempt facility, the facility must satisfy the public use requirement of paragraph (a)(2) of this section. A public utility facility described in this subparagraph (with the exception of sewage and solid waste disposal facilities which will be treated in all events as serving the general public) will satisfy the public use requirement only if such facility, or the output thereof, is available for use by members of the general public.

(ii) A facility for the local furnishing of electric energy or gas is, for purposes of applying the public use test in paragraph (a)(2) of this section, available for use by members of the general public if (a) the owner or operator of the facility is obligated, by a legislative enactment, local ordinance, regulation, or the equivalent thereof, to furnish electric energy or gas to all persons who desire such services and who are within the service area of the owner or operator of such facility, and (b) it is reasonably expected that such facility will serve or be available to a large segment of the general public in such service area. For rules with respect to facilities for the furnishing of water, see paragraph (h) of this section.

**(2) *Definitions.*** For purposes of section 103(b)(4)(E) and this paragraph—

(i) The term "sewage disposal facilities" means any property used for the collection, storage, treatment, utilization, processing, or final disposal of sewage.

(II)

(a) The term "solid waste disposal facilities" means any property or portion thereof used for the collection, storage, treatment, utilization, processing, or final disposal of solid waste. Only expenditures for that portion of property which is a solid waste disposal facility qualify as expenditures for solid waste disposal facilities. The fact that a facility which otherwise qualifies as a solid waste disposal facility operates at a profit will not, of itself, disqualify the facility as an exempt facility. However, whether a collection or storage facility qualifies as a solid waste disposal facility depends upon all of the facts and circumstances. Thus, land and facilities for the collection of materials to form a slag heap which is not preliminary to the recycling or other final disposal of such materials within a reasonable period of time will not qualify. The term does not include facilities for collection, storage, or disposal of liquid or gaseous waste except where such facilities are facilities which, under paragraph (a)(3) of this section, are functionally related and subordinate to a solid waste disposal facility.

(b) The term "solid waste" shall have the same meaning as in section 203(4) of the Solid Waste Disposal Act (42 U.S.C. 3252(4)), except that for purposes of this paragraph, material will not qualify as solid waste unless, on the date of issue of the obligations issued to provide the facility to dispose of such waste material, it is property which is useless, unused, unwanted, or discarded solid material, which has no market or other value at the place where it is located. Thus, where any person is willing to purchase such property, at any price, such material is not waste. Where any person is willing to remove such property at his own expense but is not willing to purchase such property at any price, such material is waste. Section 203(4) of the Solid Waste Disposal Act provides that:

(4) The term "solid waste" means garbage, refuse, and other discarded solid materials, including solid-waste materials resulting from industrial, commercial, and agricultural operations, and from community activities, but does not include solids or dissolved material in domestic sewage or other significant pollutants in water resources, such as silt, dissolved or suspended solids in industrial waste water effluents, dissolved materials in irrigation return flows or other common water pollutants.

(c) A facility which disposes of solid waste by reconstituting, converting, or otherwise recycling it into material which is not waste shall also qualify as a solid waste disposal facility if solid waste (within the meaning of (b) of this subdivision (ii)) constitutes at least 65 percent, by weight or volume, of the total materials introduced into the recycling process. Such a recycling facility shall not fail

to qualify as a solid waste disposal facility solely because it operates at a profit.

(d) For rules relating to property which has both a solid waste disposal function and a function other than the disposal of solid waste, see §17.1 of this chapter.

(iii) The term "facilities for the local furnishing of electric energy or gas" means property which—

(a) Is either property of a character subject to the allowance for depreciation provided in section 167 or land,

(b) Is used to produce, collect, generate, transmit, store, distribute, or convey electric energy or gas.

(c) Is used in the trade or business of furnishing electric energy or gas, and

(d) Is a part of a system providing service to the general populace of one or more communities or municipalities, but in no event more than 2 contiguous counties (or a political equivalent) whether or not such counties are located in one State.

For purposes of this subdivision, a city which is not within, or does not consist of, one or more counties (or a political equivalent) shall be treated as a county (or a political equivalent). A facility for the generation of electric energy otherwise qualifying under this subdivision will not be disqualified because it is connected to a system for interconnection with other public utility systems for the emergency transfer of electric energy.

The facilities need not be located in the area served by them. Also, the term "facilities for the local furnishing of electric energy or gas" does not include coal, oil, gas, nuclear cores, or other materials performing a similar function.

***

T.D. 7199, 7/31/72 , amend T.D. 7362, 6/17/75 , T.D. 7511, 9/30/77 , T.D. 7737, 11/14/80 , T.D. 7840, 10/12/82 , T.D. 7848, 11/10/82 , T.D. 7869, 1/12/83 , T.D. 8476, 6/14/93 , T.D. 8538, 5/5/94 , T.D. 8718, 5/8/97 .

Document Title: Reg §1.103-8 Interest on bonds to finance certain exempt facilities.
Checkpoint Source: Final, Temporary & Proposed Regulations

© Copyright 2005 RIA. All rights reserved.

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

RECEIVED
CHIEF COUNSEL

SMALL BUSINESS/SELF-EMPLOYED DIVISION    September 20, 2005

2005 SEP 27 PM 11: 01

MEMORANDUM FOR Chief Disclosure Unit    CC:PA:LPD:DLS:DU CC:PA:LPD:DLS
ATTN: Gerald C. Anderson

FROM:                Joan D. McClean  SE:S:CLD:GLD:D3
                     Disclosure Officer D3

SUBJECT:             Freedom of Information (FOIA) Request of Barbara T. Kaplan
                     Control Number 52-2005-00819

Please acknowledge receipt of this request and search all paper or electronic systems to
identify and locate records responsive to the above identified request (copy of request is
attached).

Please provide any records found to be responsive to this request, in duplicate, with your
recommendation for releasing or withholding any records within ten business days of
receipt of this request. If we do not concur with your recommendation, we will contact
you to resolve any differences before responding to the requestor. If you are unable to
respond within ten business days, please advise us in writing and provide us with your
anticipated date for responding to this request.

Generally, the records sought are located, created or generated at the Headquarters Office
level, including Chief Counsel, to include off-site Industry Directors for Large and Mid-
Size Business (LMSB) Division and Directors for Small Business/Self-Employed (SB/SE
Division. An agency's obligation under the FOIA is to conduct searches that are
reasonably calculated to locate responsive records. In addition to searching for these
files that contain responsive records, you should also request that employees of those
offices search their work stations for e-mail and other materials they store electronically.
We have sent search memoranda to: [List them] If you are aware of any other offices
that may have responsive information, please advise us within five business days so that
we may send search memoranda to those offices, too.

We ask that you complete items 3 through 12 on the attached search efforts questionnaire
and include it with your responsive records. Even if there are no responsive records, the
questionnaire should be completed to establish the extent and nature of the search
conducted in your function. The 1996 amendments to the Freedom of Information Act
provide that records must be provided in any form or format requested including
electronically, if the records are readily reproducible in that format.

For additional assistance, contact FOIA Tax Law Specialist, Regenia Rascoe at (202)
622-3662.

Attachments (2) – FOIA Request

Ex. B



DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

SMALL BUSINESS/SELF-EMPLOYED DIVISION

Barbara T. Kaplan
Greenberg & Traurig
Met Life Bldg.
200 Park Avenue
New York, NY   10166

**Person to Contact:**
Ms. Rascoe
**Telephone Number:**
(202) 622-3662
**Refer Reply to:**
SE:S:CLD:GLD:D3:/2005-00819
**Date:  September 21, 2005**

Dear Ms. Kaplan:

We must ask for additional time to locate and consider releasing the Internal Revenue Service records covered in your Freedom of Information Act (FOIA) request dated August 22, 2005, received in our office on September 2, 2005. We will try to respond within 60 days from the date of this letter. We are sorry for any inconvenience the delay may cause.

**IF YOU AGREE TO THIS VOLUNTARY EXTENSION**
If you agree too this extension of time, no reply to this letter is necessary.  You will still have the right to file an appeal if we subsequently deny any request.  You may wish to consider limiting the scope of your request so that we can process it more quickly.  If you want to limit your request, please contact the person whose name and telephone number are shown above.

**IF YOU DO NOT AGREE TO THIS VOLUNTARY EXTENSION**
If you do not agree to this extension and do not want to modify the scope of your request, you may file suit.  See 5 U.S.C. 552(a)(6)(C)(i).  You may not appeal this letter.  See revised FOIA regulations, at 31 C.F.R. 1.5(j) and 65 FEDERAL REGISTER 40504-4016 (June 30, 2000).

To file suit you must petition the U.S. District Court in the district in which you live or work, or where the records are located, or in the District Columbia, to obtain a response to your request.  Your petition will be treated according to the Federal Rules of Civil Procedure which apply to actions against any agency of the United States.  These procedures require that the IRS be notified of the pending suit, through service of process, which should be directed:

Commissioner of Internal Revenue
Attention:  CC:PA:DPL
1111 Constitution Avenue, NW
Washington, DC  20224

Ex. C

Ms. Kaplan
Page 2.

If the court concludes you have unreasonably refused to limit your request or to accept the alternate timeframe for response, it may find that our failure to meet the statutory time frames in the FOIA is justified. See 5 U.S.C. 552(a)(6)(C)(iii).

We hope you will agree to allow us more time to process your request. If you wish to contact us, please call the person whose name and telephone number are shown above.

We will try to make our determination and provide the appropriate responsive information to you as quickly as possible.

Sincerely,

Symeria R. Rascoe
Tax Law Specialist
Disclosure Office D3 - FOIA
Badge #50-05919

**Pinkney Marietta M**

| | |
|---|---|
| **From:** | White David |
| **Sent:** | Tuesday, November 01, 2005 9:54 AM |
| **To:** | Pinkney Marietta M |
| **Subject:** | RE: TD 7199 |

I found them and will return them to the Records Unit this morning. Thanks.

-----Original Message-----
| | |
|---|---|
| **From:** | Pinkney Marietta M |
| **Sent:** | Monday, October 31, 2005 4:16 PM |
| **To:** | White David |
| **Cc:** | Anderson Gerald C |
| **Subject:** | TD 7199 |


The above mentioned file was requested by our office form the Records Unit on July 5, 2005 we have be informed that the record was charge to you  and has not been returned.  If you have finished with this file would you return it to the Records Unit which is in room 5336 at your earliest convenience.

Thank you


*Marietta M. Pinkney*
*CC:PA:LPD:DLS*
*Room 2613*
*202-622-7171*

Ex. D



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224
November 28, 2005

SMALL BUSINESS/SELF-EMPLOYED DIVISION

MEMORANUDUM FOR Chief, Disclosure Unit   CC:PA:LPD:DLS:DU
                          ATTN:  Gerald C. Anderson

FROM:           Joan D. McClean        SE:S:CLD:GLD:D3
                Disclosure Office 3

SUBJECT:        Freedom of Information (FOIA) Request of Barbara T. Kaplan
                Control Number 03-2006-00207

Please acknowledge receipt of this request and search all paper or electronic systems to identify and locate records responsive to the above identified request (copy of request is attached).

Please provide any records found to be responsive to this request, <u>in duplicate,</u> with your recommendation for releasing or withholding any records within ten business days of receipt of this request.  If we do not concur with your recommendation, we will contact you to resolve any differences before responding to the requestor.  If you are unable to respond within ten business days, please advise us in writing and provide us with your anticipated date for responding to this request.

Generally, the records sought are located, created or generated at the Headquarters Office level, including Chief Counsel, to include off-site Industry Directors for Large and Mid-Size Business (LMSB) Division and Directors for Small Business/Self-Employed (SB/SE Division. An agency's obligation under the FOIA is to conduct searches that are reasonably calculated to locate responsive records.  In addition to searching for these files that contain responsive records, you should also request that employees of those offices search their work stations for e-mail and other materials they store electronically. We have sent search memoranda to: [List them]  If you are aware of any other offices that may have responsive information, please advise us within five business days so that we may send search memoranda to those offices, too.

We ask that you complete items 3 through 12 on the attached search efforts questionnaire and include it with your responsive records.  Even if there are no responsive records, the questionnaire should be completed to establish the extent and nature of the search conducted in your function.  The 1996 amendments to the Freedom of Information Act provide that records must be provided in any form or format requested including electronically, if the records are readily reproducible in that format.

For additional assistance, contact FOIA Tax Law Specialist, Regenia Rascoe at (202) 622-3662.

Attachments (2) – FOIA Request

EX. E



DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

SMALL BUSINESS/SELF-EMPLOYED DIVISION

Babara T. Kaplan
Greenberg Traurig, LLP
MetLife Buidling
200 Park Avenue
New York, NY  10166

**Person to Contact:**
Ms. Rascoe
**Telephone Number:**
(202) 622-3662
**Refer Reply to:**
SE:S:CLD:GLD:D3:/2006-00207
**Date:  November 28, 2005**

Dear Ms. Kaplan:

We must ask for additional time to locate and consider releasing the Internal
Revenue Service records covered in your Freedom of Information Act (FOIA)
request dated August 25, 2005, received in our office on November 4, 2005.  We
will try to respond within 60 days from the date of this letter. We are sorry for any
inconvenience the delay may cause.

**IF YOU AGREE TO THIS VOLUNTARY EXTENSION**
If you agree too this extension of time, no reply to this letter is necessary.  You
will still have the right to file an appeal if we subsequently deny any request.  You
may wish to consider limiting the scope of your request so that we can process it
more quickly.  If you want to limit your request, please contact the person whose
name and telephone number are shown above.

**IF YOU DO NOT AGREE TO THIS VOLUNTARY EXTENSION**
If you do not agree to this extension and do not want to modify the scope of your
request, you may file suit.  See 5 U.S.C. 552(a)(6)(C)(i).  You may not appeal this
letter.  See revised FOIA regulations, at 31 C.F.R. 1.5(j) and 65 FEDERAL
REGISTER 40504-4016 (June 30, 2000).

To file suit you must petition the U.S. District Court in the district in which you live
or work, or where the records are located, or in the District Columbia, to obtain a
response to your request.  Your petition will be treated according to the Federal
Rules of Civil Procedure which apply to actions against any agency of the United
States.  These procedures require that the IRS be notified of the pending suit,
through service of process, which should be directed:

Commissioner of Internal Revenue
Attention: CC:PA:DPL
1111 Constitution Avenue, NW
Washington, DC  20224

Ex. F

Ms. Kaplan
Page 2.

If the court concludes you have unreasonably refused to limit your request or to accept the alternate timeframe for response, it may find that our failure to meet the statutory time frames in the FOIA is justified.  See 5 U.S.C. 552(a)(6)(C)(iii).

We hope you will agree to allow us more time to process your request.   If you wish to contact us, please call the person whose name and telephone number are shown above.

We will try to make our determination and provide the appropriate responsive information to you as quickly as possible.

Sincerely,

Symeria R. Rascoe
Tax Law Specialist
Disclosure Office D3 - FOIA
Badge # 50-05919



**Part 30. Administrative**
**Chapter 9. File Management**
**Section 2. Guidelines for Specific Categories of Case Files**

---

**30.9.2 Guidelines for Specific Categories of Case Files**

- 30.9.2.1  Published Guidance
- 30.9.2.2  Advanced Case Resolution
- 30.9.2.3  Treaties, Legislation, Congressional, and Executive Correspondence
- 30.9.2.4  Legal Advice
- 30.9.2.5  Tax Court Files
- 30.9.2.6  District Court United States/Court of Federal Claims/State Court Cases
- 30.9.2.7  Criminal Tax
- 30.9.2.8  General Legal Services Files
- Exhibit 30.9.2-1  Form 9718, Case History

**30.9.2.1  (07-21-2005)**
**Published Guidance**

1. This subsection provides guidelines for establishing and maintaining files related to regulations, revenue rulings, revenue procedures, action on decisions, and other types of published guidance

**30.9.2.1.1  (07-21-2005)**
**Regulations**

1. Open a regulation project only with approval from an Assistant or Associate Chief Counsel and, if it will appear on the Guidance Priority List, the Treasury Department. Depending on the procedures adopted by each Assistant or Associate office, front office or branch personnel may open a regulation project on TECHMIS.

2. To open a regulation project, enter the TECHMIS "Add Case " screen and complete the required fields: category: PUBGUID, subcategory REG. In some circumstances, Counsel may decide to open the project using subcategory "PGP." TECHMIS generates a project number (CASE ID) that begins with "REG" (or "PGP" , if applicable). Use only this CASE ID for all phases of the regulation process, from drafting the ANPRM/NPRM to publishing the final regulation.

3. Section 7805(e) requires the Service to issue a cross-referencing NPRM when it issues temporary regulations. Open only one regulation project for temporary regulations with a cross-referencing NPRM. When the Service publishes the temporary regulations and cross referencing NPRM, update TECHMIS with status code 715 - TEMP/XREF Published. The CASE ID remains open until the Service publishes the NPRM as a final regulation or withdraws it and removes the temporary regulation.

4. Occasionally, Counsel and Treasury will decide to issue several final regulations with respect to one NPRM. The first final regulation project retains the original CASE ID. After publishing the first final regulation, close that CASE ID. Open a new CASE ID for each subsequent final regulation project. In the TECHMIS remarks screen for each subsequent final regulation project, note the name and original CASE ID of the underlying NPRM and all related final regulations. Also enter this information in the remarks screen for the first final regulation.

5. After opening the regulation project on TECHMIS, the drafting attorney creates a legal file maintains the legal file, is responsible for its contents, and retains it until the project is closed.

Exhibit G
4/19/2006

6. Punch holes at the top of the back cover of the legal file and all papers to be included in it. The first item in the file will be a copy of the TECHMIS control screen. Secure the papers with file fasteners. Label the file with the project title and CASE ID.

7. The legal file contains all documents germane to the publication of the regulation and, in accordance with Form 9506,Treasury Decision File Closing Information Sheet and Assembly Checklist , organized by subject files using Form 7881, Chief Counsel's File. (Do not include duplicate material, any readily available printed matter [e.g., statutes and the associated legislative history, court decisions], or scraps, blank sheets, etc. that do not contain substantive information). The attorney establishing the file and the reviewing attorney sign and date Form 9506.

8. The subject files and materials to be included are:

   - *Published Regulations and Notices*— all initialed and certified copies of the regulation

   - *Unmarked drafts* — a clean copy of each draft and related buckslips and distribution memoranda

   - *Service and Treasury mark-ups* — pertinent pages of mark-ups and related buckslips and distribution memoranda

   - *Briefing Memos* — internal memoranda prepared for briefings

   - *Service and Treasury Memos* — transmittal and policy memos and internal comments

   - *Conference and Briefing Reports* — summaries of conferences and briefing sessions

   - *Public Comments*— public comments, including summaries of these comments and documents related to the public hearing

   - *Administrative Memos* — regulations subsystem form and regulations development checklist (if completed), Small Business Administration documents, 7-point memo material, closing memo (if prepared), plain language summaries, and material prepared pursuant to the Paperwork Reduction Act and Small Business Regulatory Fairness Enforcement Act

9. Place handwritten notes and email communications in the appropriate subject matter file, in reverse chronological order.

10. Attach a copy of the Federal Register reprint to the cover of the legal file.

11. A regulations project is complete when the Service publishes an NPRM as a final regulation, withdraws a published NPRM without publishing final regulations, or decides not to publish a regulation. If the Service published a temporary regulation with a cross-referencing NPRM, the project is complete when the Service removes the temporary regulation and publishes the NPRM as a final regulation or withdraws the NPRM.

12. If the IRS publishes a final regulation project on TECHMIS using status code 951 (closed - publication). If the IRS withdraws an NPRM and does not publish final regulations, use status code 960 (closed - withdrawn). If the IRS decides not to publish a regulation, use status code 952 (closed - non-publication). Refer to the TECHMIS handbook for additional status codes (closed - other, closed - transferred out, closed - opened in error), not described above.

13. All regulations projects close with classification code J (Regulation & Legislation Projects).

14. When the legal file for a TD (final and temporary regulations) is complete, label it with the TD number and submit it to the Docket, Records and User Fee Branch for storage.

15. The drafting attorney retains the NPRM file after the document is published as reference for (and to be included in the legal file for) the final regulations.