**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| GEORGIA-PACIFIC CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| INTERNAL REVENUE SERVICE, | ) |
| | ) |
| Defendant. | ) |

Civil Action No. 05-02431 (RBW)
Judge Reggie B. Walton

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff Georgia-Pacific Corporation ("Georgia-Pacific"), pursuant to FED. R. CIV. P. 56, L.Civ.R. 56.1, and 5 U.S.C. § 552, submits this Memorandum of Points and Authorities in Opposition to Defendant's Cross-Motion for Summary Judgment.

## INTRODUCTION

Defendant Internal Revenue Service ("IRS") seeks summary judgment in this Freedom of Information Act ("FOIA") case, asserting that it has done enough under the FOIA to "pass muster." Its choice of words is quite telling, given its lackluster overall response to Georgia-Pacific's FOIA request and to this lawsuit. IRS made the decision early on that it would ignore the FOIA's deadlines and instead provide documents to Georgia-Pacific on its own schedule, and in furtherance of its own agenda. In direct disregard of both the spirit and the letter of the FOIA, IRS has attempted to do as little as possible.

As set forth in greater detail in Georgia-Pacific's Motion for Partial Summary Judgment and *In Camera* Review of Improperly Withheld Documents, Georgia-Pacific made its FOIA request because it is the conduit borrower with respect to numerous tax-exempt bonds which are

the subject of pending administrative proceedings before IRS. The issue in these examinations is whether the bonds issued by various governmental issuers to finance solid waste disposal facilities owned by Georgia-Pacific are tax-exempt. The outcome of each of these proceedings turns on the meaning of "solid waste," as that term is defined in Treas. Reg. Section 1.103-8(f), T.D. 7199 (the "Regulation"). IRS's definition of "solid waste" inexplicably changed at some point between the proposed and final versions of the Regulation, and Georgia-Pacific seeks disclosure of any documents that provide an explanation for this modification.

IRS has (1) failed to perform a reasonable search in response to Georgia-Pacific's FOIA request, (2) inadequately described withheld documents in the Declaration of Deborah Lambert-Dean ("Declaration"), and (3) improperly withheld seven documents pursuant to Exemption 5, 5 U.S.C. § 552(b)(5). Under the FOIA, IRS has the burden to prove the scope of its search was reasonable, and that the documents withheld are within a relevant exemption. IRS has now had two opportunities to meet this burden: once in the Declaration, and again in its Motion for Summary Judgment. IRS has failed in both instances to "pass muster," and summary judgment must therefore be denied.

## ARGUMENT

### I.    <u>Standard for Summary Judgment.</u>

When an agency seeks summary judgment in a FOIA case, it must show, "viewing the facts in the light most favorable to the requester, that there is no genuine issue of material fact." <u>Lopez v. Department of Justice</u>, 393 F.3d 1345, 1348-9 (D.C. Cir. 2005) (citing <u>Steinberg v. Department of Justice</u>, 23 F.3d 548, 551 (D.C. Cir. 1994)). When the agency has submitted an affidavit explaining why documents have been withheld, summary judgment is permitted only when the affidavits show, with reasonable specificity, why the withheld documents fall within the exemption asserted. <u>Quinon v. F.B.I.</u>, 86 F.3d 1222, 1227 (D.C. Cir. 1996). Moreover, the

2

agency has the burden to prove that the scope of its search was reasonable, and that the documents withheld are within relevant exemptions. SafeCard Serv., Inc. v. Securities and Exch. Comm'n, 926 F.2d 1197, 1205 (D.C. Cir. 1991).

## II.    IRS's search was inadequate.

To demonstrate its search was adequate under the FOIA, an agency must show that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Campbell v. United States Dep't of Justice, 164 F.3d 20, 27 (D.C. Cir. 1998) (quoting Oglesby v. United States Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990)). The reviewing court then applies a "reasonableness" test to determine the adequacy of the agency's search methodology, consistent with a congressional intent in favor of disclosure. Campbell, 164 F.3d at 27 (citing Weisberg v. United States Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983), and John Doe Agency v. John Doe Corp., 493 U.S. 146, 151-2, 110 S. Ct. 471, 475 (1989)).

As Georgia-Pacific demonstrated in its Motion for Partial Summary Judgment, IRS has failed to conduct a reasonable search for records responsive to Georgia-Pacific's FOIA request. IRS is required both by the Federal Records Act and its own internal manual to make and preserve records documenting all of its functions, policies, decisions, procedures and essential transactions. 44 U.S.C. § 3101; IRS's Statement of Material Facts at ¶11. However, none of the documents produced in response to Georgia-Pacific's FOIA requests or listed on the IRS's Declaration appear to address the fact of or reason for the substantial modification to the definition of "solid waste" in the Regulation. Given IRS's legal obligation to maintain a record of this change, only two possible conclusions can be drawn: either (1) documents do not exist and IRS has not fulfilled its duty under the FRA, or (2) IRS's search for records responsive to Georgia-Pacific's FOIA request was inadequate. If the reason for the missing documents

explaining why IRS changed the definition of "solid waste" from that which was originally proposed is that none exist, IRS should simply say so.

The responding agency "has discretion to conduct a standard search in response to a general request, but it must revise its assessment of what is 'reasonable' in a particular case to account for leads that emerge during its inquiry." Campbell, 164 F.3d at 28. For this reason, the reviewing court "evaluates the reasonableness of an agency's search based on what the agency knew at its *conclusion* rather than what the agency speculated at its inception." Id. (emphasis added). In the present case, IRS knew at the conclusion of its search (by virtue of a letter from Georgia-Pacific's counsel if nothing else) that it had not located documents explaining the modification to the definition of "solid waste" in the Regulation. Nevertheless, IRS did not supplement its search, nor did it state that no such documents exist.

The cases cited by IRS in its attempt to demonstrate that its search meets the bare minimum under the FOIA are distinguishable from the present case. Remarkably, IRS attempts to rely upon Meeropol v. Meese, 790 F.2d 942 (D.C. Cir. 1986), a case involving a broad request for and production of thousands of documents relating to the investigation and prosecution of Julius and Ethel Rosenberg, which the court characterized as "the most demanding FOIA request ever filed," 790 F.2d at 951, for the proposition that agencies do not have to find "every responsive file." Id. at 953. Maybe so; but in this case, where Georgia-Pacific's FOIA request was extremely narrow, IRS did not find *even one document* that addressed the fact of or reason for the substantial modification to the definition of "solid waste." Here, it is clear that IRS did not "ma[ke] a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Campbell, 164 F.3d at 27.

The present case more similarly resembles <u>Steinberg v. Department of Justice</u>, 23 F.3d 548 (D.C. Cir. 1994), also cited by IRS in its Motion. While the court in <u>Steinberg</u> acknowledged that "mere speculation that as yet uncovered documents may exist" does not undermine the search, <u>see id.</u> at 552, the plaintiff presented evidence that the documents found were not sufficient, and the court denied summary judgment to the agency on this issue. In the present case, the Declaration shows that IRS hastily searched and located a single file, and did so only when faced with a deadline to answer Georgia-Pacific's Complaint in this lawsuit. Declaration at ¶¶ 6-12. There is no evidence that any office within IRS attempted to find records other than the file for T.D. 7199, even after Georgia-Pacific brought to IRS's attention that none of the documents produced in response to Georgia-Pacific's FOIA requests or listed on the IRS's Declaration appear to address the fact of or reason for the substantial modification to the definition of "solid waste" in the Regulation.

Ultimately, the explanation for the missing documents describing IRS's change in the definition of "solid waste" may be that no such documents exist. If this is the case, then IRS should say so. However, IRS has not made such a statement in the Declaration or its Motion, and Georgia-Pacific therefore challenges the reasonableness of IRS's search for responsive documents.

**III.    The IRS Declaration fails to satisfy *Vaughn v. Rosen* and is inadequate to support summary judgment.**

Under <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), IRS must provide a detailed index or similar document sufficient to establish that the documents may be withheld from disclosure. <u>Vaughn</u>, 484 F.2d at 827. The purpose of a <u>Vaughn</u> Index is to "permit adequate adversary testing of the agency's claimed right to an exemption." <u>Schiller v. NLRB</u>, 964 F.2d 1205, 1209 (D.C. Cir. 1992). IRS's Declaration, however, does not satisfy its obligation under

Vaughn, because it is unspecific and confusing.  Georgia-Pacific has identified seven documents which appear to have been improperly withheld.  Part of the problem with the Declaration is that it does not fully explain what these seven documents are or why the exemptions claimed by IRS apply.  As a result, an *in camera* review of these seven documents is necessary.

In a FOIA case, *in camera* review is warranted except in rare circumstances when the agency affidavits are sufficiently detailed and reliable.  As the District of Columbia Circuit stated in Quinon v. F.B.I.:

> In some cases, the affidavits provide a sufficient basis for granting summary judgment in favor of the Government without an *in camera* review of the withheld documents.    As we stated in Hayden v. National Security Agency/Central Security Service, 608 F.2d 1381 (D.C. Cir. 1979), however, the affidavits must show, with reasonable specificity, why the documents fall within the exemption.    The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping.  If the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents.

86 F.3d at 1227.  Moreover, under Steinberg – a case cited by IRS to *support* its Motion – "agency affidavits that do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requester] to challenge the procedures utilized" are not sufficient under Vaughn and do not justify a grant of summary judgment.  Steinberg, 23 F.3d at 552 (citing Weisberg v. Department of Justice, 627 F.2d 365, 371 (D.C. Cir. 1980)).

IRS has withheld five drafts of the Regulation using the following description:  "a draft (or portion of a draft) of the proposed regulation on industrial development bonds as it was contemplated for promulgation under section 103 of the Internal Revenue Code."  Declaration at ¶19(f).  As Georgia-Pacific demonstrated in its Motion for Partial Summary Judgment, IRS asserts a generalized, blanket exemption, and it is impossible to know what, if anything, these

drafts pertain to and why they are exempt.  In fact, there are actually thirteen documents withheld by this same paragraph, but IRS confirmed (upon Georgia-Pacific's inquiry) that only five of them pertain to solid waste disposal facilities.  This admission alone demonstrates the deficiencies in the Declaration.  The fact that five of the thirteen withheld documents differ materially from the other eight illustrates the need for greater detail in the Declaration itself. There is simply no telling what other releasable documents are hiding behind the IRS's deliberately vague and unhelpful descriptions.

For these reasons, the Declaration fails to satisfy Vaughn, and it does **not** suffice for a grant of summary judgment without *in camera* review.  IRS's claimed exemptions are conclusory, vague, sweeping, and have been contradicted by Georgia-Pacific.  Moreover, as set forth in Section II of this Memorandum, the IRS has not met its burden of showing that it performed a reasonable search for records in response to Georgia-Pacific's FOIA request.

Even the authority cited by IRS in its Motion discredits the Declaration's assertions and compels *in camera* review.  A good example is the contrast between the description in the Declaration for the five withheld drafts of the Regulation, and the draft regulation withheld in Pies v. IRS, 668 F.2d 1350 (D.C. Cir. 1981).  The Declaration in the present case gives just one sentence, and fails to identify anything about the documents' preparation, content, or drafter(s). Compare this with what the court in Pies knew about just two withheld documents:

> Mr. Bley authored a four-page draft transmittal memorandum, which summarized the substance and history of proposed regulations, and a 146-page draft of proposed regulations.  These drafts were preliminary and never received final approval even within the Legislation and Regulations Division.  Nor were the drafts reviewed or approved by the Assistant Secretary of the Treasury for Tax Policy, who is the official charged with the responsibility for rejecting or accepting such proposed regulations.
>
> The transmittal memorandum and the proposed regulations were transmitted by Bley's supervisor, together with a draft notice of proposed rulemaking, to the tax legislative counsel of the Department of Treasury for his comments.  The

> documents were returned by the tax legislative counsel with the suggestion that
> they be revised to reflect the repeal of the investment credit in parts of another
> section of the Internal Revenue Code. Separate regulations reflecting the repeal
> of the investment credit provision of the Code were developed and later published
> as T.D. 7126 . . . The bulk of the drafts concerning Section 48(h) did not appear as
> a part of TD 7126 since the draft regulations dealt with the then repealed
> investment credit provisions of the Code. There was no further revision or review
> of the proposed regulations for Section 48(h) since the project was closed in
> December 1971 . . . but copies of the unpublished draft regulations were retained
> in IRS files where they have no official sanction as IRS interpretation or
> statement of policy.

Pies, 668 F.2d at 1351 (internal citations omitted). The contrast between the level of detail

provided in Pies and that provided in the Declaration is striking. In Pies, IRS presented an

extensive history of the document, including its author, the process for its drafting, and the

review process for the draft regulation. None of that (or anything even remotely resembling that)

is presented in the Declaration for the five withheld drafts of T.D. 7199.

Similarly, in SafeCard Serv., Inc. v. Securities and Exch. Comm'n, 926 F.2d 1197 (D.C.

Cir. 1991), another case cited by IRS, the D.C. Circuit found the following Vaughn Index

description unacceptable:

> At this 1/24/78 meeting, the [SEC] discussed whether to file an injunctive action
> against Marc Howard and Howard Associates. At the conclusion of this
> discussion, the Commission reached a decision on this question. These minutes
> reflect the Enforcement attorney's recommendations to the Commission that are
> protected from disclosure by the deliberative process privilege.

SafeCard, 926 F.2d at 1204. The court found this description inadequate because "[t]he SEC

needs to explain such matters as how decisions like those in issue are reached; the role that staff

discussion and memoranda play in such decisions; the manner in which such decisions are

memorialized and explained; and whether such decisions are treated, in later agency

decisionmaking, as precedents." Id. But even the disapproved-of document description in

SafeCard is more complete than any description IRS made in the Declaration. Both Pies and

SafeCard illustrate that IRS has not done nearly enough to satisfy <u>Vaughn</u> or to warrant summary judgment.

## IV.    The IRS's assertions for withholding the seven contested documents fail to "pass muster."

As established in Georgia-Pacific's Motion for Partial Summary Judgment, IRS has failed to meet its burden of establishing that it properly withheld seven documents under Exemption 5 and the deliberative process privilege.  Exemption 5 protects from disclosure "inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  To be protected under Exemption 5, documents must be both "predecisional" and "deliberative."  <u>Defenders of Wildlife v. United States Dep't of Agriculture</u>, 311 F. Supp. 2d 44, 56 (D. D.C. 2004).  To be "predecisional," the document must be generated as part of a continuing process of agency decisionmaking – in other words, it must have been prepared to assist the agency in arriving at a decision.  <u>Id.</u> at 58.  To be "deliberative," it must be a "direct part of the deliberative process," <u>i.e.</u>, it must "make[] recommendations or express[] opinions on legal or policy matters."  <u>Id.</u>  The seven documents identified by Georgia-Pacific have been improperly withheld by IRS, because they are not "predecisional" and certainly are not "deliberative."

> <u>Document #1</u>:  Memorandum dated January 2, 1969 from Mr. McDaniel to a government employee Mr. Surrey consisting of an assessment of the intended purpose of the proposed regulation being drafted under section 103 and containing a summary of the principal issues encountered during the formulation of the proposed regulation as well as the IRS's intended response to these issues.  Declaration at ¶19(ll).

This document has been improperly withheld because IRS has not shown that it is deliberative.  Information is no longer "deliberative" if "the materials have been 'adopted formally or informally, as the agency position on an issue' or 'used by the agency in its dealings with the public,'"  <u>Leadership Conference on Civil Rights v. Gonzales</u>, 404 F. Supp. 2d 246, 255

9

(D. D.C. 2005), and all documents embodying the "agency's effective law and policy" are "subject to FOIA-mandated production." American Soc'y of Pension Actuaries v. Internal Revenue Serv., 746 F. Supp. 188, 190 (D. D.C. 1990) ("ASPA") (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 153, 95 S. Ct. 1504, 1518 (1975)).  The "intended purpose" of the Regulation became the agency's adopted policy, and is therefore not protected by the deliberative process privilege.  Gonzales, 404 F. Supp. 2d at 255;  ASPA, 746 F. Supp. at 190. Moreover, the Declaration fails to satisfy another element of Exemption 5:  that the document is "intra-agency" or "inter-agency."  Mr. McDaniel is identified in the Declaration as Tax Legislative Counsel within IRS, but Mr. Surrey is merely identified as a "government employee."  Communications between agencies and their consultants, independent contractors and other third parties are exempt only to the extent that the consultant/independent contractor/third party does not represent its own interest, but rather that of the agency (e.g., as a fiduciary).  Department of the Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 11-12, 121 S. Ct. 1060, 1067 (2001).  To the extent that Mr. Surrey is a self-interested third party, his communications with IRS are not protected by Exemption 5, and nothing in IRS's Declaration or Motion establishes that Mr. Surrey was representing anything other than his own interests,

IRS claims in its Motion that this document is exempt because it contains IRS's intended response to issues encountered during the formulation of the Regulation.  Def. Mot. at 10.  But to the extent this "intended response" constitutes "agency policy," the document is clearly *not* protected by Exemption 5.  Gonzales, 404 F. Supp. 2d at 255;  ASPA, 746 F. Supp. at 190.  Even if the document contains some protected material (i.e., issues encountered during formulation of the proposed regulation), the FOIA requires IRS to release as much segregable material as

possible.  5 U.S.C. § 552(b); see also Judicial Watch v. Department of Justice, 432 F.3d 366, 372

(D.C. Cir. 2005) (factual material is not protected under the deliberative process privilege unless

it is "inextricably intertwined" with the deliberative material).[1]

It is also possible that this document was not "predecisional," either.[2]  A proposed

version of the Regulation was published by the U.S. Treasury Department on June 5, 1971.

Thereafter, a public hearing respecting the proposed regulation was held.  However, without any

further explanation, on July 5, 1972, the U.S. Treasury Department issued the *final* regulation

defining solid waste disposal facilities in a way that was substantially different from the

definition contained in the proposed regulation.  To the extent that this withheld document –

indeed, that any withheld document – relates to the proposed version of the Regulation that was

published on June 5, 1971, this too would not be predecisional.  IRS describes the document as

an "assessment of the intended purpose of the proposed regulation being drafted;" if this was

merely an assessment of the version of the Regulation published on June 5, 1971, it would be

postdecisional and, as a statement of agency policy, would not be deliberative.

---

[1] The authority cited by IRS in its Motion, particularly Judicial Watch, Inc. v. Export-Import Bank, 108 F. Supp. 2d 19 (D. D.C. 2000), illustrates the Court's affirmative duty to enforce this segregability requirement.  This Court stated in Judicial Watch that, "[t]o ensure that all reasonably segregable information has been disclosed to the requester, the district court is required to enter a finding on segregability," and that "[e]ven if the issue of segregability has not been raised by the plaintiff, the district court has 'an affirmative duty to consider the segregability issue sua sponte.'"  Judicial Watch, 108 F. Supp. 2d at 25 (quoting Trans-Pacific Policing Agreement v. United States Customs Serv., 177 F.3d 1022, 1028 (D.C. Cir. 1999)).

[2] IRS argues in its Motion that the withheld documents are all predecisional, because Georgia-Pacific's FOIA request sought only predecisional documents. Def. Mot. at 8.  A simple reading of the request disposes of IRS's argument.  Georgia-Pacific sought "copies of any and all documents . . . that **pertain to** or were considered, reviewed, or referred to by Internal Revenue Service or Treasury Department personnel in connection with the promulgation, and any amendments thereto, of Treasury Regulation Section 1.103-8(f), T.D. 7199" (emphasis added).  Documents pertaining to T.D. 7199 certainly do not encompass only predecisional documents, and the fact that IRS released nearly 3,000 pages of text to Georgia-Pacific confirms that IRS did not understand the request to seek only predecisional documents.

> Document #2:  an undated, unsigned draft memorandum concerning the
> proper tax treatment of industrial development bonds when issued by non-
> specific entities.  Declaration at ¶19(aaa).

This document is improperly withheld because it is neither predecisional nor deliberative.

Because it is a memorandum concerning the "proper" treatment of industrial development bonds,

it is postdecisional – in fact, it is precisely the kind of document "made after the decision and

designed to explain it" identified by the United States Supreme Court in Sears.  Moreover, to the

extent it applies to the June 5, 1971 version of the Regulation, it is also postdecisional.  The

advisory nature of the memorandum (and the fact that it seeks to explain "policy") demonstrates

that the document is not deliberative either.  This document embodies the IRS's effective law

and policy, see ASPA, 746 F. Supp. at 190, and cannot possibly be deliberative.

IRS does not elaborate in its Motion as to why this document is "deliberative," other than

the bald assertion that it should "clearly be withheld."  Def. Mot. at 9.  To the extent IRS

believes (and attempts to raise on reply) that the document can be withheld partly because it is an

"undated, unsigned draft memorandum," it is incorrect.  Simply labeling a document "draft" does

not make it exempt pursuant to the deliberative process privilege, Defenders of Wildlife, 311 F.

Supp. at 58, and IRS invokes no other applicable privilege.  See Declaration at ¶19 (asserting

only the deliberative process privilege to documents withheld under Exemption 5).

Not only does IRS's description of this withheld document fail to "pass muster," but it

has done virtually nothing in its Motion to demonstrate why this document should be withheld.

IRS is improperly withholding this document, and the Court should order IRS to release it.

> Documents #3-7:  a draft (or portion of a draft) of the proposed regulation on
> industrial development bonds as it was contemplated for promulgation under
> section 103 of the Internal Revenue Code.  Declaration at ¶19(f).

IRS spends the most time in its Motion attempting to justify its withholding of the five

challenged drafts of the Regulation.  Perhaps IRS recognizes just how deficient its description of

12

these documents is under <u>Vaughn</u>.  Regardless, these five documents have all been improperly

withheld via a broad, general description which sheds absolutely no light on the reason IRS

refused to disclose them.  Although IRS claims that these draft regulations embody the type of

"agency give-and-take" that the deliberative process privilege is meant to protect, <u>see</u> Def. Mot.

at 11, there is nothing in the Declaration to prove this assertion.  By IRS's own description, the

documents do not contain intra-agency communications, or even handwritten notes or margin

notations indicative of a "deliberative process."  They are merely drafts of the Regulation, and

simply labeling these documents "draft" does not make them exempt under Exemption 5.

<u>Defenders of Wildlife</u>, 311 F. Supp. at 58.

     Draft regulations adopted as agency policy, or portions thereof, are not exempt under the

deliberative process privilege.  <u>Rosenthal and Schanfield v. Internal Revenue Serv.</u>, 1980 WL

1590, at *1 (N.D. Ill. Apr. 22, 1980), an unreported case from the Northern District of Illinois,

involved a FOIA request very similar to Georgia-Pacific's, in which the plaintiff sought an

explanation for the IRS's adoption of a Treasury Regulation.  The court held that, where the draft

regulation contained language expressly adopted in the final published regulation, the document

was not protected by Exemption 5 and had to be released.  In reaching this conclusion, the court

in <u>Rosenthal</u> relied upon the Supreme Court's instruction in <u>Sears</u> that documents an agency

chooses "expressly to adopt or incorporate by reference" are not exempt.  <u>Rosenthal</u>, 1980 WL

1590 at *3.

     Similarly, the only case cited by IRS in its Motion involving a draft regulation, <u>Pies v.</u>

<u>I.R.S.</u>, supports the <u>Rosenthal</u> court's interpretation of Exemption 5.  In <u>Pies</u>, the court held that a

draft regulation not subjected to final review and relating to a repealed regulation was

deliberative and, accordingly, exempt via Exemption 5.  668 F.2d at 1353-4.  However, the <u>Pies</u>

court drew the line at documents not "finalized" or "approved to reflect agency policy." Id. at 1354. IRS fails to establish that the drafts of the Regulation at issue in the present case do not reflect approved agency policy. The withheld unpublished regulations in Pies "were retained in IRS files where they have no official sanction as IRS interpretation or statement of policy." Id. at 1351. The record in the present case reveals no such designation. Similarly, the draft regulations in Pies were unpublished; even if the withheld regulations are drafts of the June 5, 1971 version of the Regulation, this document was still published agency policy and all drafts reflective of this public document (or portions thereof) are not exempt.

Finally, IRS attempts to equate the withheld drafts of the Regulation with documents held exempt in Russell v. Air Force, 682 F.2d 1045 (D.C. Cir. 1982) and Dudman Comm. Corp. v. Air Force, 815 F.2d 1565 (D.C. Cir. 1987). However, both Russell and Dudman involved the disclosure of draft manuscripts of historical documents (i.e., articles) written by employees of the Office of Air Force History. Because they were personal opinions and not reflective of final agency policy, they were deliberative. Although IRS claims in conclusory fashion that the drafts of the Regulation were somehow personal opinions not reflective of final agency policy, there is nothing in its Motion or in the Declaration to support this bald assertion. The draft Regulations were not a "story" recounting historical events, as the documents in Russell and Dudman were. Neither the Declaration nor IRS's Motion indicate that the drafts of the Regulation contain handwritten notes, personal opinions, or anything other than the plain text of the Regulation. To the extent that any of this plain text was published on June 5, 1971, or was adopted as text of the final Regulation, it is not protected by Exemption 5.

**CONCLUSION**

IRS's Cross-Motion for Summary Judgment must be denied. After trying only to "pass muster," IRS has failed even to do that. IRS did not satisfy its burden to prove that the scope of its search was reasonable and that its claimed exemptions apply to withheld documents. The scope of IRS's search was inadequate, and the Court should order IRS to perform a full and complete search in order to identify all documents explaining the agency's rationale for the substantial modification of the definition of "solid waste" during the rulemaking process. If IRS cannot perform the search because such documents do not exist, IRS must say so. In addition, the Court should review the seven improperly-withheld documents identified in this Memorandum *in camera* because the IRS Declaration claiming exemptions as to those documents is patently inadequate. Unless such review clearly demonstrates that the deliberative process exemption to disclosure applies, the Court should order that the documents be released.

For the foregoing reasons, Plaintiff Georgia-Pacific requests that the Court deny Defendant IRS's Cross-Motion for Summary Judgment.

Dated: July 7, 2006                                    Respectfully submitted,

                                                       _____/s/_____
                                                       David P. Callet (DC Bar No. 181990)
                                                       Ross E. Eisenberg (DC Bar No. 489045)
                                                       GREENBERG TRAURIG LLP
                                                       800 Connecticut Ave., N.W., Suite 500
                                                       Washington, DC 20006

                                                       OF COUNSEL:

                                                       Michael L. Lehr
                                                       Greenberg Traurig, LLP
                                                       Two Commerce Square, Suite 2700
                                                       2001 Market Street
                                                       Philadelphia, PA 19103

                                                       *Counsel for Plaintiff*
                                                       *Georgia-Pacific Corporation*