IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GEORGIA-PACIFIC CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:05CV02431 (RBW) |
| | ) | |
| INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

**INTERNAL REVENUE SERVICE'S MEMORANDUM
IN OPPOSITION TO PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

This case is brought by plaintiff pursuant to the Freedom of Information Act (FOIA) in which Plaintiff alleges the Internal Revenue Service (the "Service") refused to supply requested records and files.  The Service provided plaintiff with the documents prior to the parities' filing of cross-motions for summary judgment.  In its motion for summary judgment, plaintiff contends that the Service conducted an inadequate search for responsive documents.  Plaintiff further contends that the Service improperly withheld the seven documents at issue in this action under the FOIA exemption 5 U.S.C. § 552(b)(5).  In this opposition to plaintiff's motion for summary judgment, the Service asserts that it conducted a reasonable search and that the Contested Documents were properly withheld.

ISSUES PRESENTED

1.     Plaintiff's FOIA request sought all documents that pertain to or were
       considered, reviewed, or referred to by the Internal Revenue Service or
       Treasury Department personnel in connection with the promulgation and
       any amendments thereto, of Treasury Regulation Section 1.103-8(f), T.D.
       7199.  In accordance with the guidelines set forth in the Internal Revenue
       Manual, the documents sought in plaintiff's FOIA request are maintained
       in one file that is labeled with the T.D. number and stored at Legal
       Processing Division.  Pursuant to plaintiff's FOIA request, the Service
       located the file for T.D. 7199 and produced 2,918 pages that were released
       to plaintiff in full and 125 pages that were released to plaintiff in part.  Has
       the Service made a reasonable search?

2.     5 U.S.C. § 552(b)(5), in conjunction with the governmental deliberative
       process privilege, protects from compelled disclosure drafts of final
       published guidance, as well as other documents prepared by components
       within the Service, primarily within Chief Counsel, to assist the executives
       that issued the final published regulation guidance prior to those
       individuals reaching final decisions concerning how issues would be
       treated in the final guidance.  Such documents must be both predecisional
       and deliberative in nature.  The Service withheld seven documents (the
       "Contested Documents") pursuant to 5 U.S.C. § 552(b)(5),  in conjunction

2

with the governmental deliberative process privilege.   Did the Service

properly withhold these documents?

STATEMENT OF ADDITIONAL FACTS

In its cross-motion for summary judgment, plaintiff contended that the

Declaration of Deborah Lambert-Dean failed to describe the Contested Documents, or

the reason the exemption applies to them, with sufficient specificity. (Pl. Mem. at 9.)

Plaintiff also argued that the Service improperly withheld the Contested Documents

under the FOIA exemption 5 U.S.C. § 552(b)(5), generally alleging that the documents

were not predecisional or deliberative, and in one instance, not inter-agency or intra-

agency documents.  In order to clarify and elaborate on the descriptions of the Contested

Documents, the Service submits the Second Declaration of Deborah Lambert-Dean (2d

Lambert-Dean Decl.) as Exhibit 1 to this opposition.   Lambert-Dean's second declaration

further describes the Contested Documents as follows:

1.  The document described by plaintiff on page 13 of its memorandum as

"Document 1" (numbered as pages 1230-1234 and described in paragraph 19 (ll) of the

first Lambert-Dean Declaration) is a memorandum dated January 2, 1969 from Mr.

McDaniel, the Tax Legislative Counsel for IRS, to Mr. Stanley Surrey, an Assistant

Secretary of the Treasury. (2d Lambert-Dean Decl. ¶7.)  This memorandum is addressed

by a subordinate (Mr. McDaniel) to a superior (Mr. Surrey) and is intended to provide

Assistant Treasury Secretary Surrey with an assessment of the intended purpose of the

proposed regulation and a summary of the principal issues encountered during the

1542735.3

formulation of the proposed regulation as well as the Service's intended response to those issues. (Id.) This assessment seems to have been an attempt by the Tax Legislative Counsel to provide the Assistant Secretary with pertinent information as his office considered whether and how to proceed with respect to finalization of T.D. 7199. (Id.)

2. The document described on page 13 of plaintiff's memorandum as "Document 2" (and numbered as pages 2152-2156 and described in paragraph 19(aaa) of the first Lambert-Dean Declaration) is an undated, unsigned draft document that in its opening paragraph indicted that it was prepared in response to a request for advice as to whether interest on bonds issued by a certain type of non-specified entity to finance certain facilities would be excludable from gross income of the bondholders. (2d Lambert-Dean Decl. ¶8.) Each page of this document has handwritten and typed notations in the margins and between the lines suggesting the same person had reviewed the document and was proposing revisions to the document, thus denoting that it was not finalized. (Id.) No similar signed finalized document was found in the file for T.D. 7199. (Id.) This document is not directly related to the formulation of the final regulation T.D. 7199, but is tangentially related in that it addresses issued raised in the context of industrial revenue bonds. (Id.)

3. The remaining five documents are described by plaintiff as "Documents 3-7" on page 14 of its memorandum (and numbered as pages 883-1015, 1028-1042, 1332-1333, 1378-1440 and 2080-2148 and described at paragraph 19(f) of the first Lambert-Dean Declaration) and consist of drafts, either in full or in part, of the proposed and final

4

regulation, T.D. 7199. (2d Lambert-Dean Decl. ¶9.) Each of these draft documents is separately described below.

(a) Pages 883-1015: This is a draft dated November 14, 1968 of the proposed regulation for industrial development bonds. (Id.) The proposed regulation was not published until June 5, 1971 and July 13, 1971. (Id.) This draft was created two and one-half years prior to finalization of these proposed amendments and it contains numerous suggested revisions to the content in the margins and between the lines of the text. (Id.) After comparing the text of this document to the text in the final proposed regulation and to the final regulation, T.D. 7199, Lambert-Dean determined that they are not substantially similar. (Id.)

(b) Pages 1028-1042: This is an undated partial draft of the proposed regulation that is numbered page five through pages 72. (Id.) This draft document contains numerous "strike-outs" indicating text that had been suggested be removed as well as proposed revisions to the content between the lines of text. After comparing the text of this document to the text in the final regulation, T.D. 7199, Lambert-Dean determined that the two documents are not substantially similar. (Id.)

(c) Pages 1332-1333: This is an undated partial draft of the proposed regulation that is numbered pages ten and 11 with the heading "Public Utility Facilities." After comparing these draft pages to the portion of the final regulation T.D. 7199 that has the heading "Certain public utility facilities" Lambert-Dean determined that the two documents are not substantially similar. (Id.)

1542735.3

(d) Pages 1378-1440:  This is a draft dated August 30, 1968, of the proposed regulation for industrial development bonds. (Id.)  The proposed amendments to the regulations were not published until June 5, 1971 and July 13, 1971. (Id.)  This draft was created almost three years prior to finalization of these proposed amendments and it contains suggested revisions to the content between the lines of the text. After comparing the text of this document to the text in the final proposed regulation and to the final regulation, T.D. 7199, Lambert-Dean determined that they are not substantially similar. (Id.)

(e) Pages 2080-2148:  This is a draft of the final regulation, T.D. 7199 dated July 5, 1972.  After comparing this draft document to the final regulation T.D. 7199, Lambert-Dean determined that while they are more similar than the other draft documents cited above as paragraph 9(a)-(d), there are substantial differences between this draft document and the final regulation. (Id.)  For example, certain revisions to the text of the document that appeared to be under consideration at this time this draft was created on July 5, 1972 have been revised or omitted from the final regulation.    (Id.)

ARGUMENT

I.

THE LAMBERT-DEAN DECLARATION ESTABLISHES THAT THE SERVICE
PERFORMED A GOOD FAITH SEARCH REASONABLY CALCULATED
TO UNCOVER ALL RESPONSIVE DOCUMENTS.

As established by the undisputed material facts in this case, the Service's search under the FOIA request at issue produced 2,918 pages released to plaintiff in full and 125 pages released to plaintiff in part.  Plaintiff argues to this Court that 3,043 responsive

6

pages is the product of an unreasonable search. (*see* Pl. Mem. at 6.)  As the sole basis for

its contention, plaintiff asserts that "since the IRS substantially modified the definition

after publication of proposed regulations and before issuing the version it now relies on

to declare interest on the Bonds taxable," an explanation of the Service's change in  policy

with respect to the definition of "solid waste" and "solid waste disposal facilities"

should be located somewhere in the file for T.D. 7199 (Pl. Mem. at 6).  Plaintiff's

argument is without merit.

     As stated in the Service's memorandum in support of its cross-motion for

summary judgment, in order for a FOIA search to pass muster in this circuit, the agency

must establish that it executed a search "'reasonably calculated to uncover all relevant

documents.'" Steinberg v. United States Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994)

(quoting Weisberg v. United States Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)

("Weisberg II")); accord, Shores v. FBI, 185 F.Supp.2d 77, 82 (D.D.C. 2002); Judicial

Watch, Inc. v. Export-Import Bank, 108 F.Supp.2d 19, 25 (D.D.C. 2000).  In determining

the reasonableness of a search, it is well established that "[t]he issue is *not* whether any

further documents might conceivably exist but rather whether the government's search

for responsive documents was adequate." Nat'l Institute of Military Justice v. United

States Dep't of Def., 404 F.Supp.2d 325, 333 (D.D.C. 2005)(emphasis in original).  The

adequacy of an agency's search is "measured by a 'standard of reasonableness' and is

'dependant upon the circumstances of the case.'" Id.

     To demonstrate the reasonableness of the search, the agency must set forth

1542735.3

sufficient information in an affidavit for the court to determine that the search was reasonable. Defenders of Wildlife v. United States Dep't of Agriculture, 311 F. Supp.2d 44, 54 (D.D.C. 2004). Although an agency's affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence of bad faith. Defenders of Wildlife, 311 F.Supp.2d. at 54. Such evidence can not, however, be comprised of "purely speculative claims about the existence and discoverability of other documents." Id. quoting SafeCard Servs., Inc. v. S.E.C., 926 F.2d 1197, 1201 (D.C. Cir. 1991).

Based upon plaintiff's FOIA request in this case, all responsive documents should be located in the file for T.D. 7199. The assembly and storage of files such as the file for T.D. 7199 at issue here, is governed by guidelines set forth in the Internal Revenue Manual [IRM]. (Lambert-Dean Decl. ¶13.) The IRM specifies that the attorney assigned to a regulation project is to create a legal file that the attorney is responsible for maintaining until the file is closed. The legal file is to contain all documents germane to the publication of the regulation, including published regulations and notices, unmarked drafts, drafts that have been marked-up by the Service and/or the Department of Treasury along with related buckslips and distribution memoranda, briefing memoranda, the Service and Treasury memoranda (designated as transmittal, policy memoranda and internal comments), conference and briefing reports (designated as summaries of conferences and briefing sessions), public comments (including summaries of these comments and documents related to public hearings), administrative memoranda, handwritten notes, email communications and, after a regulation has been

8                                              1542735.3

published, a copy of the *Federal Register* reprint. (Id.)  When a regulation is published and the assembly of the legal file for the T.D. is complete, the file is to be labeled with the T.D. number and submitted to the Docket, Records and User Fee Branch in LPD for storage.  <u>See</u> IRM at 30.9.2.1.1 (7-21-2005). (Id.)

  Plaintiff contends that the Service cannot limit its search to "only one record system if there are others that are likely to turn up the information requested" (Pl. Mem. at 7); however, the FOIA does not mandate a "perfect search."  <u>Defenders of Wildlife</u>, 311 F.Supp.2d at 56.  Moreover, "there is no requirement that an agency search every division within it when the agency believes that responsive documents are located in one place." (Id.)  As set forth in the Lambert-Dean Declaration, the legal file for T.D. 7199 contains all documents germane to the publication of the regulation.  (Lambert-Dean Decl., ¶13).  Moreover, plaintiff, itself, acknowledges that "[under] the IRS's own rules, then any document relating to the adopted definition of "solid waste" should be kept in the file designated for T.D. 7199." (Pl. Mem. at 7).  Plaintiff's only evidence that the search is inadequate or should produce additional documents, is its contention that the "IRS must have at least one document explaining why it changed the definition of 'solid waste' from that which was originally proposed.'" (Pl. Mem. at 8).  This is a "purely speculative" claim and is not sufficient to rebut the presumption of good faith accorded the Service's declaration.  Accordingly, this Court should find that the search was adequate.

9

II.
THE IRS WITHHOLDINGS ARE JUSTIFIED
UNDER THE FOIA EXEMPTION 5 U.S.C. § 552(b)(5)

Plaintiff next challenges (1) the sufficiency of the Lambert-Dean Declaration under the requirements set forth in Vaughn v. Rosen and (2) the material the Service withheld under the FOIA Exemption 5 U.S.C. §552(b)(5) ("Exemption 5"). As will be shown below, the first Lambert-Dean Declaration combined with certain clarifications and elaborations provided by the second Lambert-Dean Declaration establish genuine, material, undisputed facts under which this Court should sustain the material withheld by the Service under the FOIA without the need for further declarations or an *in camera* review.

Section 552(b)(5) exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." The purpose of this exemption is "to protect the deliberative process of the government, by ensuring that persons in an advisory role would be able to express their opinions freely to agency decision-makers without fear of publicity [that might]...inhibit frank discussion of policy matters and likely impair the quality of decisions." The Bureau of Nat'l Affairs, Inc. v. United States Dep't of Justice, 742 F.2d 1484, 1497 (D.C. Circuit 1984).

To qualify for Exemption 5, the documents must be both predecisional and deliberative. Defenders of Wildlife, 311 F.Supp.2d at 59. A document is predecisional if it was "prepared in order to assist an agency decision maker in

10                                                    1542735.3

arriving at his decision rather than to support a decision already made." Nat'l
Institute of Military Justice, 404 F.Supp.2d at 346. To be deliberative, a
communication must be "a direct part of the deliberative-process in that it makes
recommendations or expresses opinions on legal or policy matters. Defenders of
Wildlife 311 F.Supp.2d at 58 citing Vaughn, 484 F.2d at 24.

A.   **The Memorandum Originally Described at Paragraph 19 (ll) of the
Lambert-Dean Declaration is Exempt from Disclosure Under
Exemption 5 and the Governmental Deliberative Process Privilege.**

Document #1: Memorandum dated January 2, 1969 from Mr.
McDaniel to a government employee Mr. Surrey consisting of an
assessment of the intended purpose of the proposed regulation being
drafted under section 103 and containing a summary of the principal
issues encountered during the formulation of the proposed
regulation as well as the IRS's intended response to these issues.
(Lambert-Dean Decl. ¶19(ll).)

Plaintiff contends that Document #1 has been improperly withheld under
Exemption 5 because it is not "intra-agency" or "inter-agency" and because the
document is not deliberative. (Pl. Mem. at 13). As detailed in the 2d Lambert-Dean
Declaration, Document #1 is a memorandum dated January 2, 1969 from Mr.
McDaniel, the Tax Legislative Counsel, to Mr. Stanley Surrey, an Assistant
Secretary of the Treasury. (2d Lambert-Dean Decl. ¶7.) As such, the
memorandum satisfies the requirement that the document be "intra-
agency"because both the Tax Legislative Counsel and the Assistant Secretary are
located within the Department of Treasury.

Document #1 is also predecisional and deliberative. This memorandum is

11                                            1542735.3

addressed by a subordinate (Mr. McDaniel) to a superior (Mr. Surrey) and is

intended to provide Assistant Treasury Secretary Surrey with an assessment of the

intended purpose of the proposed regulation and a summary of the principal

issues encountered during the formulation of the proposed regulation as well as

the Service's intended response to those issues. (Id.)  The memorandum's

assessment seems to have been an attempt by the Tax Legislative Counsel to

provide the Assistant Secretary with pertinent information as his office considered

whether and how to proceed with respect to finalization of T.D. 7199. (2d Lambert-

Dean Decl. ¶7.)  This is precisely the type of communication that is deliberative in

that it "makes recommendations or expresses opinions on legal or policy matters."

Defenders of Wildlife, 311 F.Supp.2d at 58.

Additionally, in determining whether a document qualifies under

Exemption 5, the identity of the parties can provide important assistance.

Specifically, " [a] document from a subordinate to a superior official is more likely

to be predecisional while a document moving in the opposite direction is more

likely to contain instructions to staff explaining the reasons for a decision already

made." Defenders of Wildlife, 311 F.Supp.2d at 58 ; see also Tax Analysts v. IRS, 97

F.Supp.2d 13, 16-17 (D.D.C. 2000), aff'd in part, rev'd in part, 294 F.3d 71 (D.C. Cir.

2002)(deliberative process privilege protects from disclosure legal memoranda

prepared by docket attorneys to assist in the preparation of proposed revenue

based upon the facts of their flow from subordinates to superiors and that they

12

reflected agency "give and take."); <u>Brinton v. Department of State</u>, 636 F.2d 600

(D.C. Cir. 1980) (legal advice to Secretary of State categorically deemed to be

deliberative process material), <u>cert. denied</u>, 452 U.S. 905 (1981).

Document #1 is an "intra-agency or inter-agency" memorandum that is

both predecisional and deliberative; therefore, the document was properly

withheld pursuant to Exemption 5.

> **B.     The Memorandum Originally Described at Paragraph 19 (aaa) of
> the Lambert-Dean Declaration is Exempt from Disclosure Under
> Exemption 5 and the Governmental Deliberative Process Privilege.**
>
> > Document #2: an undated, unsigned (no author or intended recipient
> > is identified) draft memorandum concerning the proper tax
> > treatment of industrial development bonds when issued by non-
> > specific governmental entities.  This document contains the author's
> > analysis and opinions as to whether such transactions would enjoy
> > tax exempt status. (Lambert-Dean Decl. ¶19(aaa).)

A document is predecisional if it was "prepared in order to assist an agency

decisionmaker in arriving at his decision, rather than to support a decision already

made." <u>Cobell v. Norton</u>, 213 F.R.D. 1, 4 (D.D.C. 2003).  In determining whether

the document is predecisional, "a court must be able to pinpoint an agency

decision or policy to which the document contributed." <u>Id</u>; <em>see also</em> <u>Judicial Watch,

Inc.</u>, 297 F.Supp.2d at 259.

Plaintiff alleges that the Document #2 is not predecisional because it is

"precisely the kind of document made after the decision and designed to explain

it." (Pl. Mem. at 14).  Plaintiff appears to be confused about which agency decision

1542735.3

is at issue in the memorandum. Document #2 was prepared in response to a request for advice as to whether interest on bonds issued by a certain type of non-specified entity to finance certain facilities would be excludable from gross income of the bondholders. (2d Lambert-Dean Decl. ¶8.) The decision that this memorandum concerns is the potential tax treatment of interest on certain bonds with respect to certain taxpayers under the regulation, not the regulation itself. At the time the memorandum was drafted, the agency would not have yet made a determination regarding the tax treatment of the interest on the specific bonds in question. Furthermore, no finalized version of the memorandum was located in the file. (Id.) Accordingly, the document is predecisional.

Plaintiff also alleges that Document #2 is not deliberative. As stated above, to be deliberative, the document must have been a "direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." Cobell, 213 F.R.D. at 5. Document #2 expressly serves that purpose in that it was a memorandum prepared in response to a request for advice and provides opinions on legal and/or policy matters. Accordingly, the document is deliberative.

Because Document #2 is both predecisional and deliberative, it was properly withheld under Exemption 5.

//

//

14

1542735.3

C.   **The Draft Regulations Originally Described at Paragraph 19(f) of the Lambert-Dean Declaration are Exempt from Disclosure Under Exemption 5 and the Governmental Deliberative Process Privilege.**

Documents #3-7: a draft (or portion of a draft) of the proposed regulation on industrial development bonds as it was contemplated for promulgation under section 103 of the Internal Revenue Code. (Lambert-Dean Decl. ¶19(f).)

"Drafts of agency orders, regulations, or official histories are **routinely** deemed to be protected by the [deliberative process] privilege") (emphasis added) Cobell at 6 (D.D.C. 2003). Where drafts are not adopted by a final ruling, the logical inference drawn is that the documents "do not serve as agency 'working law.'" Arthur Andersen & Co., 679 F.2d at 259. Absent a logical inference to the contrary drawn from the documents or contrary evidence, there is no reason to believe that the withheld documents have been used by the agency and are other than predecisional. Ibid.

In this case, plaintiff correctly contends that where the draft regulation contained language expressly adopted in the final published regulation, the document was not protected by Exemption 5 and should be released. (Pl. Mem. at 15.) None of the drafts at issue here, however, are substantially similar to the final published regulation. (2d Lambert-Dean Decl. ¶10.) Thus, the documents at issue are predecisional.

The documents are also deliberative. One first starts with the premise that predecisional documents are likely to qualify as privileged. See Arthur Andersen

1542735.3

& Co., 679 F.2d at 257. Deliberative materials are all communications that would

expose publicly an agency's decisionmaking process and candid discussions. See

Russell v. Department of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982); see

also, Dudman Comm. Corp. v. Department of the Air Force, 815 F.2d 1565, 1568

(D.C. Cir. 1987); Hamilton Securities Group, Inc. v. Department of Housing and

Urban Dev., 106 F.Supp.2d 23, 31 (D.D.C. 2000), aff'd, 2001 WL 238162 (D.C. Cir.

Feb. 23, 2001). The withheld documents here easily meet this standard.

Furthermore, the Court is able to pinpoint a decision, policy, or decisionmaking

process to which the document contributed. *See* Cobell at 4 (D.D.C. 2003); Judicial

Watch, Inc., 297 F.Supp.2d at 259. Here, the record is clear that the withheld

documents contributed to the proposed and final regulation on industrial

development bonds as it was contemplated for promulgation under section 103 of

the Internal Revenue Code. (Lambert-Dean Decl. ¶ 36; 2d Lambert-Dean Decl. ¶ 9.)

These documents are predecisional, deliberative documents entitled to

protection under the deliberative process privilege.

III

PLAINTIFF'S REQUEST FOR AN *IN CAMERA* INSPECTION
OF THE CONTESTED DOCUMENTS

The supplemental Lambert-Dean Declaration provides clarification

regarding all of the issues raised by plaintiff in its cross-motion for summary

judgement. For the reasons set forth above, the Service contends that the

Contested Documents were properly withheld under Exemption 5; however, the

1542735.3

Service does not oppose an *in camera* inspection of the Contested Documents should the Court deem it necessary to make an accurate determination.

CONCLUSION

The undisputed facts set forth in the original and second Lambert-Dean declarations therefore establish that the Service has performed a reasonable search and that the Service has properly withheld the Contested Documents under Exemption 5 and the governmental deliberative process privilege. Accordingly, the Service respectfully submits that this Court should grant it summary judgment as a matter of law and dismiss the plaintiff's action with prejudice.

DATED: July 8, 2006

Respectfully submitted,

/s/ Brittney N. Campbell
DAVID M. KATINSKY
BRITTNEY N. CAMPBELL
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6435

OF COUNSEL:

KENNETH L. WAINSTEIN
United States Attorney

17

1542735.3

## CERTIFICATE OF SERVICE

IT IS CERTIFIED that the foregoing INTERNAL REVENUE

SERVICE'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S CROSS-

MOTION FOR SUMMARY JUDGMENT was caused to be served this 8th day of

July, 2006, by depositing a true and correct copy thereof in the United States mail,

postage prepaid, addressed as follows:

        David P. Callet, Esq.
        Greenberg Traurig LLP
        800 Connecticut Avenue, NW
        Suite 500
        Washington, D.C. 20006

        /s/ Brittney N. Campbell
        BRITTNEY N. CAMPBELL

1542735.3

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF COLUMBIA

3

4  GEORGIA-PACIFIC CORP.,       )

5      Plaintiff,        )    1:05 CV-02431
                           )

6       v.             )

7  INTERNAL REVENUE SERVICE   )
                           )

8      Defendant.       )

9        SECOND DECLARATION OF DEBORAH LAMBERT-DEAN

10      I, DEBORAH LAMBERT-DEAN, pursuant to the provisions of 28 U.S.C.

11  ' 1746, declare and say:

12      1.  I am an attorney in the Office of Chief Counsel, Disclosure & Privacy

13  Law [DPL], Branch 2, Internal Revenue Service [IRS] and, since December

14  2005, I have been assigned to the above-captioned case.  I have been employed

15  as an attorney in Disclosure & Privacy Law since September 1987.

16      2.  As part of my official duties, I am responsible for coordinating with the

17  Department of Justice the IRS's defense of the Freedom of Information Act

18

19  (FOIA) lawsuit in which this declaration is being filed.

20      3.  I have personally reviewed and am familiar with all the documents at issue

21  in this lawsuit

22      4.  In the "DECLARATION OF DEBORAH LAMBERT-DEAN" dated May 9,

23

24  2006, (hereafter referenced as my "first Declaration") which was submitted to the

25  Court in conjunction with the Government's Cross-Motion for Summary Judgment, I

26  described the IRS search for responsive documents and those categories of

27

28                           1

EXHIBIT

1    documents which the IRS has determined to be responsive to plaintiff's FOIA

2    request, but which were exempt from disclosure under the FOIA.

3         5.  I am submitting the instant Declaration in response to plaintiff's Motion for

4    Partial Summary Judgment dated June 16, 2006.  I have attempted to structure

5    certain of my responses to correspond to issues that were raised by plaintiff in their

6    "MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S

7    MOTION FOR PARTIAL SUMMARY JUDGMENT AND *IN CAMERA* REVIEW OF

8    IMPROPERLY-WITHHELD DOCUMENTS" (hereafter referenced as "Plaintiff's

9

10   Motion").

11        6.  At paragraph "C" on page 12 of plaintiff's Motion, plaintiff indicates that it

12   is challenging the Government's assertion of FOIA Exemption 5 with respect to

13

14   seven documents that were withheld in their entirety.  We will address these

15   documents in the same order as they are presented by plaintiff.

16        7.  The document described by plaintiff on page 13 of its Motion as

17   "Document 1" (numbered as pages 1230-1234 and described in paragraph 19 (ll) of

18   my First Declaration) is a memorandum dated January 2, 1969 from Mr. McDaniel,

19   the Tax Legislative Counsel for IRS, to Mr. Stanley Surrey, an Assistant Secretary of

20   the Treasury.  This memorandum is addressed by a subordinate (Mr. McDaniel) to a

21   superior (Mr. Surrey) and is intended to provide Assistant Treasury Secretary Surrey

22

23   with an assessment of the intended purpose of the proposed regulation and a

24   summary of the principal issues encountered during the formulation of the proposed

25   regulation as well as the IRS's intended response to those issues.  This assessment

26   seems to have been an attempt by the Tax Legislative Counsel to provide the

27

2

Assistant Secretary with pertinent information as his office considered whether and how to proceed with respect to finalization of T.D. 7199.

8. The document described on page 13 of plaintiff's Motion as "Document 2" (and numbered as pages 2152-2156 and described in paragraph 19(aaa) of my First Declaration) is an undated, unsigned draft document that in its opening paragraph indicted that it was prepared in response to a request for advise as to whether interest on bonds issues by a certain type of non-specified entity to finance certain facilities would be excludable from gross income of the bondholders. Each page of this document has handwritten and typed notations in the margins and between the lines suggesting the some person had reviewed the document and was proposing revisions to the document, thus denoting that it is not finalized. I could find no similar signed finalized document in the file for T.D. 7199. This document is not directly related to the formulation of the final regulation T.D. 7199, but is tangentially related in that it addresses issued raised in the context of industrial revenue bonds.

9. The remaining five documents are described by plaintiff as "Documents 3-7" on page 14 of its Motion (and numbered as pages 883-1015, 1028-1042, 1332-1333, 1378-1440 and 2080-2148 and described at paragraph 19(f) of my First Declaration) and consist of drafts, either in full or in part, of the proposed and final regulation, T.D. 7199. I will discuss each of these draft documents separately.

(a). Pages 883-1015: This is a draft dated November 14, 1968 of the proposed regulation for industrial development bonds. The proposed regulation were not published until June 5, 1971 and July 13, 1971. This draft was created 2 and one-half years prior to finalization of these proposed amendments and it

3

contains numerous suggested revisions to the content in the margins and between

the lines of the text. After comparing the text of this document to the text in the final

proposed regulation and to the final regulation, T.D. 7199, I determined that they are

not substantially similar.

(b)  Pages 1028-1042:  This is an undated partial draft of the proposed

regulation that is numbered page 5 through page 72.  This draft document contains

numerous "strike-outs" indicating text that has been suggested be removed as well

as proposed revisions to the content between the lines of text.  After comparing the

text of this document to the text in the final regulation, T.D. 7199, I determined that

the two documents are not substantially similar.

(c)  Pages 1332-1333:  This is an undated partial draft of the proposed

regulation that is numbered pages 10-11 with the heading "Public Utility Facilities."

After comparing these draft pages to the portion of the final regulation T.D. 7199

that has the heading "Certain public utility facilities" I determined that that the two

documents are not substantially similar.

(d) Pages 1378-1440:  This is a draft dated August 30, 1968, of the proposed

regulation for industrial development bonds.  The proposed amendments to the

regulations were not published until June 5, 1971 and July 13, 1971.  This draft was

created almost 3 years prior to finalization of these proposed amendments and it

contains suggested revisions to the content between the lines of the text. After

comparing the text of this document to the text in the final proposed regulation and

to the final regulation, T.D. 7199, I determined that they are not substantially similar.

(e)  Pages 2080-2148:  This is a draft of the final regulation, T.D. 7199

4

dated July 5, 1972.  After comparing this draft document to the final regulation

T.D. 7199, I determined that while they are more similar than the other draft

documents cited above as paragraph 9(a)-(d), there are substantial differences

between this draft document and the final regulation.  For example, certain

revisions to the text of the document that appeared to be under consideration at

this time this draft was created on July 5, 1972 have been revised or omitted

from the final regulation.

 10.  As I represented in my First Declaration, I am familiar with the

segregation requirement of subsection (b) of the FOIA for any nonexempt

information contained in responsive agency records. I have reviewed all

documents at issue in this litigation and have attempted to make every

 reasonably segregable non-exempt portion of every responsive document

available to the plaintiff.  The IRS has withheld in their entirety only those

documents that fall within a FOIA exemption, or those documents wherein the

portions exempt from disclosure under the FOIA are so inextricably intertwined

with nonexempt material as to be non-segregable.

 I declare under penalty of perjury that the foregoing is true and correct.

 Executed on _July 6_, 2006.


DEBORAH LAMBERT-DEAN
Office of Chief Counsel
(Disclosure & Privacy Law)
Internal Revenue Service

5