IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GEORGIA-PACIFIC CORP., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> INTERNAL REVENUE SERVICE, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 05-02431 (RBW) <br> Judge Reggie B. Walton |

## REPLY IN SUPPORT OF PLAINTIFF GEORGIA-PACIFIC'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND *IN CAMERA* REVIEW OF IMPROPERLY-WITHHELD DOCUMENTS

Plaintiff Georgia-Pacific Corporation ("Georgia-Pacific") submits this Reply in Support of its Motion for Partial Summary Judgment and *In Camera* Review of Improperly-Withheld Documents.

With Defendant Internal Revenue Service's ("IRS") Opposition to Georgia-Pacific's Motion and its Reply in support of its own Motion,[1] IRS has failed four times to explain to the Court (1) why the scope of its search in response to Georgia-Pacific's FOIA request was reasonable despite its acknowledged failure to identify and produce any documents addressing IRS's change to the definition of "solid waste" in Treasury Regulation Section 1.103-8(f), T.D. 7199 (the "Regulation"), document(s) that it was legally required to create and maintain and (2) how its decision to withhold the seven challenged documents at issue in this case is justified under FOIA Exemption 5 and the

---

[1] IRS filed its reply brief in this case on Friday, July 14, 2006 – one week before the due date for replies set by the Court's order of May 29, 2006. The IRS's reply once again proclaims the reasonableness of its search while acknowledging that it has not located the documents sought by Georgia-Pacific.

deliberative process privilege, when it refuses to provide detail about these documents sufficient to sustain its decision. Recognizing that its Vaughn Index and the first Declaration of Deborah Lambert-Dean were clearly deficient, IRS's Opposition contains a second, but similarly deficient, Declaration of Deborah Lambert-Dean (the "Second Declaration").

Georgia-Pacific asks the Court to (1) require IRS to state whether or not the missing document(s) exist, and (2) review the seven withheld documents *in camera* and release all improperly-withheld documents to Georgia-Pacific.

## ARGUMENT

**I.   IRS cannot contend that its limited, unsuccessful search for document(s) that it is legally required to maintain was reasonable, without admitting that the missing document(s) do not exist.**

On June 5, 1971, IRS published a proposed version of the Regulation. On July 5, 1972, IRS published the final version of the Regulation, which contained a substantial modification to the definition of "solid waste." Although IRS had a legal obligation under the Federal Records Act to "make and preserve" document(s) addressing that change, 44 U.S.C. § 3101, IRS has not identified or produced such document(s).

In its Opposition, IRS admits that "all responsive documents *should* be located in the file for T.D. 7199." Defendant's Memorandum in Opposition ("Def. Opp.") at 8 (emphasis added). Moreover, IRS's own internal manual requires that this file contain "all documents germane to the publication of the regulation." Id. at 8. IRS implicitly acknowledges that it has not located or produced a document explaining the change to the definition of "solid waste" in the Regulation. This acknowledgement, however, does not end the inquiry. IRS looked in *one file* – the file for T.D. 7199 – and did not locate the missing document(s). Given IRS's legal obligation to create such a document, its

decision to limit its search to the file for T.D. 7199 is not reasonable. The only way IRS can justify its limited search is to state affirmatively that the missing document(s) do not exist.

It may well be that IRS does not have the legally-required document that addresses the change to the definition of "solid waste." But, under these circumstances, IRS cannot claim that its search was reasonable just because it looked in the file that *should* contain the document(s). If such a document does not exist, Georgia-Pacific will concede that the IRS search was reasonable. IRS simply has to say "yes" or "no." Instead, IRS says "maybe."

IRS opposes Georgia-Pacific's challenge to its search as "speculative." Georgia-Pacific's challenge is hardly speculative. The missing document addressing the change to the definition of "solid waste" is something IRS is *required* by law and by its own internal policy manual to have maintained in its files. Indeed, this situation is akin to Founding Church of Scientology v. National Security Agency, 610 F.2d 824 (D.C. Cir. 1978), where the requester was able to point to errors made by the agency during the FOIA response process and cast significant doubt upon the reasonableness of the search itself. The requester determined that "fifteen responsive documents concededly in NSA's possession were passed by," see id. at 835, and the D.C. Circuit held, in light of this information, that (1) the agency's searches were not reasonable, and (2) the agency's affidavit in support of summary judgment was not to be believed. Id. at 834-5. In the present case, as in Founding Church of Scientology, "[t]he fact that nothing pertinent is found on a file search might suggest, of course, that nothing pertinent was on file, but

here there is a countervailing circumstance arguing powerfully the other way." Id. at 835.

The absence of legally-required documentation addressing the change to the definition of "solid waste" calls into substantial question the adequacy of IRS's search. If IRS simply admits that the missing document(s) do not exist, Georgia-Pacific will abandon its challenge. However, if IRS refuses to acknowledge that the document(s) do not exist, then, as in Founding Church of Scientology, more is required to meet the reasonable search obligations imposed by FOIA.

II.     **The Second Declaration does not justify IRS's withholding of the seven challenged documents.**

In its prior briefing Georgia-Pacific exposed many deficiencies in the first Declaration of Deborah Lambert-Dean (the "First Declaration"). In an obvious effort to backfill, IRS submitted the Second Declaration with its Opposition. IRS now argues that the Second Declaration, taken together with the First Declaration, provides adequate justification for withholding the seven challenged documents in this case. However, contrary to IRS's assertion, the descriptions in Second Declaration even further warrant *in camera* review[2] and the release of the seven improperly-withheld documents to Georgia-Pacific.

The main problem with the Second Declaration is that it fails to assert affirmatively the content of the withheld documents. IRS must demonstrate that each withheld document meets the two prongs of the deliberative process privilege. As in the First Declaration, the Second Declaration studiously avoids this obligation.

---

[2] IRS does not object to the Court's *in camera* review of the seven challenged documents. Def. Opp. at 16-17.

The Second Declaration contains precisely the kind of conclusory descriptions disapproved of in Vaughn v. Rosen, 484 F.2d 820, 826 (D.C. Cir. 1973), and its progeny. In Vaughn, the D.C. Circuit held that courts would "simply no longer accept conclusory and generalized allegations of [FOIA] exemptions." 484 F.2d at 826. Eighteen years later, in SafeCard Serv., Inc. v. Securities and Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991), the D.C. Circuit reiterated that agency affidavits must be "relatively detailed and non-conclusory," and ultimately held that the SEC's descriptions of allegedly exempt deliberative process material were insufficient. Specifically, SEC "failed to explain the decision-making process in such a way as to make it clear that there is no need for such disclosure," and it therefore had "not met its burden of demonstrating that the deliberative process exemption is applicable." Id. at 1205. Like the SEC's affidavit in SafeCard, the Second Declaration fails to describe the decision-making process inherent in each withheld document, and to explain why the content of each is protected by the deliberative process privilege.

By way of analogy, assume the IRS is withholding the contents of a box. To justify its actions, IRS chooses to describe the outside of the box, such as its color and shape. But what is really important is what is *inside* the box, yet IRS refuses to provide enough information as to what is in the box and why it should be withheld. This is precisely what IRS has done in the Second Declaration. IRS seizes upon various superficial indicia of deliberative process – such as "draft" designation, handwritten notes, or the fact that a document was written by a subordinate to a superior – to persuade the Court that these documents are protected by Exemption 5.[3] But IRS does not, in any

---

[3] It should be noted that many of these details were not included in the First Declaration and were added only in response to Georgia-Pacific's Motion.

pleading or affidavit, explain why the *contents* of each challenged document are subject to the deliberative process privilege.[4]

Taking the deficient descriptions in the Second Declaration on their face, it is clear that the seven challenged documents are not protected. The document repeatedly referred to as "Document 1" is a memorandum from Tax Legislative Counsel for IRS to the Assistant Secretary of the Treasury containing "an assessment of the intended purpose of the proposed regulation." Second Declaration at ¶7. Thus, even as described by the Second Declaration, Document 1 appears to be a clear expression of the agency's policy. Information is no longer "deliberative" if "the materials have been 'adopted formally or informally, as the agency position on an issue' or 'used by the agency in its dealings with the public,'" Leadership Conference on Civil Rights v. Gonzales, 404 F. Supp. 2d 246, 255 (D. D.C. 2005), and all documents embodying the "agency's effective law and policy" are "subject to FOIA-mandated production." American Soc'y of Pension Actuaries v. Internal Revenue Serv., 746 F. Supp. 188, 190 (D. D.C. 1990) ("ASPA") (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 153, 95 S. Ct. 1504, 1518 (1975)). The "intended purpose" of the Regulation became the agency's adopted policy, and is therefore not protected by the deliberative process privilege. Gonzales, 404 F. Supp. 2d at 255; ASPA, 746 F. Supp. at 190.

In addition, Document 1 may not even be predecisional. As Cobell v. Norton, a case cited by IRS, makes clear, "'even if [a] document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public.'" 213 F.R.D.

---

[4] IRS may argue that describing the contents of the documents is tantamount to waiver of the deliberative process privilege. This is simply inappropriate in light of the well-established principles of SafeCard and Vaughn, *supra*.

6

1, 5 (D. D.C. 2003) (quoting Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980)). The Second Declaration states that Document 1 "seems to have been an attempt by the Tax Legislative Counsel to provide the Assistant Secretary with pertinent information as his office considered whether and how to proceed with respect to finalization of T.D. 7199." Second Declaration at ¶7. Assuming the Assistant Secretary followed counsel's advice – and IRS does not state otherwise – then the content of the memorandum has been adopted as the agency's position and is neither predecisional nor deliberative.

The descriptions of "Document 2," the "undated, unsigned draft document" containing handwritten and typed notations and lacking a similar finalized document,[5] see Second Declaration at ¶8, and "Documents 3-7," prior drafts of the Regulation containing strike-outs and handwritten notations, see Second Declaration at ¶9, suffer from the same problem: each description focuses on the various indicia of deliberative process, but in no case explains what the document is actually about and why the privilege applies to that content. With respect to the drafts of the Regulation, Ms. Lambert-Dean states only that she compared the text in each document to the text of the proposed and final versions of the Regulation and determined that they were not "substantially similar." Second Declaration at ¶¶ 8-9. This type of conclusory, non-specific assertion has been explicitly disapproved in Vaughn, SafeCard, and should not be allowed by this Court. See, e.g., SafeCard, 926 F.2d at 1204 (disapproving the "very limited information about the nature of the deliberative process" SEC applied to selected withheld documents in its affidavit).

---

[5] This prompts the question how, if a final version of Document 2 does not exist, Ms. Lambert-Dean knows Document 2 is a draft.

More importantly, IRS never explains why the various "strike-outs" and other changes in the drafts of the Regulation are "predecisional" or "deliberative." When regulations are "approved to reflect agency policy," the portions of those documents that reflect that policy are not protected by the deliberative process privilege. Pies v. I.R.S., 668 F.2d 1350, 1354 (D.C. Cir. 1981). To the extent any of the strike-outs or edits were changes eventually reflected in the proposed Regulation or the final Regulation, the change itself is no longer "predecisional" or "deliberative" and must be released.

The purpose of the FOIA is "to pierce the veil of administrative secrecy and open agency action to the light of public scrutiny." Department of the Air Force v. Rose, 425 U.S. 352, 361, 96 S. Ct. 1592, 1599 (1976). Available FOIA exemptions "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." Id. IRS bears the burden of proving that the seven challenged documents meet each prong of the deliberative process privilege. SafeCard, 926 F.2d at 1205. Its conclusory, non-specific Declarations simply do not satisfy that burden. In light of IRS's four failed attempts to justify withholding the challenged documents, Georgia-Pacific requests that the Court review the documents *in camera* and release all seven to Georgia-Pacific.

## CONCLUSION

For the foregoing reasons, Plaintiff Georgia-Pacific requests that the Court grant its Motion for Partial Summary Judgment and *In Camera* Review of Improperly-Withheld Documents.

Dated: July 21, 2006

Respectfully submitted,

/s/ *Ross E. Eisenberg*
David P. Callet (DC Bar No. 181990)
Ross E. Eisenberg (DC Bar No. 489045)
GREENBERG TRAURIG LLP
800 Connecticut Ave., N.W., Suite 500
Washington, DC 20006

OF COUNSEL:

Michael L. Lehr
Greenberg Traurig, LLP
Two Commerce Square, Suite 2700
2001 Market Street
Philadelphia, PA  19103

*Counsel for Plaintiff*
*Georgia-Pacific Corporation*